565-06/GMV
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant Maersk
80 Pine Street
New York, New York 10005
(212) 425-1900
Gina M. Venezia (GV 1551)
William J. Pallas, Esq. (WP 6201)
Pamela L. Schultz (PS 0335)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| NORTON MCNAUGHTON OF SQUIRE, INC., JONES APPAREL GROUP, INC., <br><br> Plaintiffs, <br><br> - against - <br><br> M/V MARGRETHE MAERSK, *in rem,* Maersk Line, Maersk Sealand, <br><br> Defendants | 07 CV 3716 (RWS) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MAERSK'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

SUMMARY OF FACTS .......................................................................................................1

RELEVANT BILL OF LADING PROVISIONS ..................................................................5

POINT I

IN ACCORDANCE WITH THE SUMMARY JUDGMENT STANDARDS,
MAERSK IS ENTITLED TO PARTIAL SUMMARY JUDGMENT
LIMITING LIABILITY ........................................................................................................6

POINT II

PLAINTIFFS' DAMAGES ARE LIMITED TO US $500
PER CONTAINER PURSUANT TO U.S. COGSA.................................................................8

    A.      COGSA Governs the Parties' Rights & Liabilities Herein. ....................................8

    B.      The Garments on Hanger ("GOH") Containers Identified on the
                 the Bill of Lading Constitute the Applicable "Package" for Purposes
                 of the $500 Package Limitation Under §4(5) of COGSA
                 and the Maersk Bill of Lading. .............................................................................9

    C.      In the Alternative, If the Court Does Not Find the Containers
                 to be the COGSA Package, the Shipment Should be Treated as
                 "Goods Not Shipped in Packages", and  Damages Should be
                 Limited to US $500 Per Customary Freight Unit .................................................14

     D.      The Shipper Had a "Fair Opportunity" To
                 Declare a Higher Value for the Cargo. ..................................................................15

CONCLUSION .....................................................................................................................16

# TABLE OF AUTHORITIES

## CASES:

*Alternative Glass Supplies v. M/V NOMZI,*
   1999 AMC 1080 (S.D.N.Y. 1999)...............................................................................11

*Aluminios Pozuelo v. S.S. NAVIGATOR,*
   407 F.2d 152 (2nd Cir. 1968)......................................................................................9

*Am. Home Assurance Co. v. Crowley Am. Transp., Inc.,*
   2003 AMC 510, 2003 U.S. Dist. LEXIS 2072 (S.D.N.Y. 2003)......................................12

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ...................................................................................................7

*Aviles v. S.S. SAN JUAN*, 1991 AMC 2681 (S.D.N.Y. 1991) .........................................12

*Binladen BSB Landscaping v. M/V NEDLLOYD ROTTERDAM,*
   759 F.2d 1006 (2d Cir. 1985), *cert denied*, 474 U.S. 902 (1985)................................10-11

*Celotex Corp. v. Catrett,*
   477 U.S. 316 (1986) ...................................................................................................7

*Douglas v. United Serv. Auto. Ass'n.,*
   79 F.3d 1415 (5th Cir. 1996) ......................................................................................7

*Fishman & Tobin, Inc. v. Tropical Ship. & Const. Co., Ltd.,*
   1999 AMC 1051 (S.D. Fl. 1999), *aff'd.,* 240 F.3d 956 (11th Cir. 2001)...........................13

*Gen. Elec. Co. v. Nedlloyd*, 1987 AMC 1817 (2nd Cir. 1987) .......................................16

*Hayes-Leger Associates, Inc. v. M/V Oriental Knight,*
   765 F.2d 1076 (11th Cir. 1985) ...................................................................................13

*In Re Maritima Aragua*, 1992 AMC 1603 (S.D.N.Y. 1992)......................................8, 10

*Ins. Co. of N.Am. v. Blue Star (N.Am.)*, 1997 AMC 2434 (S.D.N.Y. 1997) ..................8

*Ins. Co. of N.Am. v. M/V OCEAN LYNX,*
   901 F.2d 934 (11th Cir. 1990), *cert. denied,* 498 U.S. 1025 (1991) ..............................15

*Marcraft Clothes, Inc. v. M/V KUROBE MARU,*
   575 F.Supp. 239 (S.D.N.Y. 1983) ...............................................................................14

*Matsushita Elect. Indus. Co. v. Zenith Radio*, 475 U.S. 580 (1986) ..............................7

*Mitsui & Co. Ltd. v. American Export Lines, Inc.*,
    636 F.2d 807 (2nd Cir. 1981) ............................................................................. 10

*Monica Textile Corp. v. S.S. Tana*, 1992 A.M.C. 609 (2d Cir. 1991). ........................................... 9

*Nat'l Auto. Publications, Inc. v. U.S. Lines, Inc.*,
    1982 AMC 2299 (S.D.N.Y. 1980) ...................................................................... 8

*Orient Overseas Container Line (UK) Ltd. v. Sea-Land Serv. Inc.*,
    122 F.Supp. 2d 481 (S.D.N.Y.) 2000) ......................................................... 8, 11

*Seguros Illimani S.A. v. M/V POPI*, 929 F.2d 89 (2nd Cir. 1991) ................................................. 10

## STATUTES & LEGISLATION:

Fed.R.Civ.Proc. 56 ......................................................................................................... 6

United States Carriage of Goods by Sea Act ("COGSA"), Act, ch. 229,
    49 Stat. 1207 (1936), formerly codified at 46 U.S.C. §1300 *et seq* ....................... 1, *passim*

## OTHER:

Schoenbaum, Admiralty & Maritime Law (3d ed. 2001) ............................................................ 15

## PRELIMINARY STATEMENT

Defendant A.P. Moller – Maersk A/S (hereinafter "Maersk") submits this memorandum of law in support of its motion for partial summary judgment to limit Plaintiffs' damages, if any, to US$500 per package or customary freight unit pursuant to the United States Carriage of Goods by Sea Act ("COGSA"), Act, ch. 229, 49 Stat. 1207 (1936), formerly codified at 46 U.S.C. §1300 *et seq.*, and the terms of Maersk's bill of lading.

Maersk is entitled to an order limiting Plaintiffs' damages to $1000.00 as provided for in COGSA, since the bill of lading describes the subject cargo as two containers said to contain "32999 pieces" of ladies garments and the shipper failed to declare a higher value for the cargo. Maersk does not concede liability, but seeks only to limit any potential liability to a total of $1,000.00 on the grounds that the two shipping containers constituted the applicable COGSA "package" for purposes of the COGSA package limitation, or alternatively, based upon the customary freight unit, which in this case was based on a lump sum basis per container. There is no factual or legal issue which prevents the Court from ruling on this motion.

## SUMMARY OF FACTS

This action involves alleged damages to a shipment consisting of two containers said to contain, in total, 32,999 "pieces" of ladies garments. The garments consisted of individual pieces of blouses and skirts. The two containers were transported onboard the M/V MARGRETHE MAERSK from Hong Kong to Norfolk, Virginia.[1] Both containers were carried pursuant to Maersk Bill of Lading No. MAEU 501016075 (the "Bill of Lading").

---

[1] The container which is the subject of the claim of odor contamination was stowed on the vessel in slot 060988, which reflects that the container was stowed on deck, several tiers above the deck plating.

The containers were loaded/"stuffed" with the garments and sealed by the shipper or its agents. The sealed containers were then delivered to Maersk. The fact that the shipper stuffed and sealed the containers is reflected in the Bill of Lading, which states that the shipment was subject to "Shipper's Load, Stow, Weight and Count" terms and transported on a "CY / CY" basis (meaning "container yard to container yard"). A copy of the front side and reverse terms of the Bill of Lading are attached as Exhibits A and B to the Declaration of Massoud Messkoub, Director of the Claims Department of Maersk, Inc. (hereinafter "Messkoub Decl.").

The Bill of Lading contains a section entitled "**PARTICULARS FURNISHED BY SHIPPER-CARRIER NOT RESPONSIBLE**", in which the shipper or its agents described the cargo as follows:

> Kind of packages; Description of goods; Marks and Numbers; Container No./Seal No.
> Shipper's Load, Stow, Weight and Count
> Freight Collect
>
> Garment on       2  Container(s)
> Hanger              32999 PCS
>                     CY / CY
> MSKU6058710         Ladies' 100% Polyester Woven Skirt
> 40/Vent 8'6"        Style: YBX – 9993 PCS.
> ML– HK3460128       Ladies' 100% Polyester Woven Blouse
> MAEU6000176         Style: YNC – 3832 PCS.
> 40/Vent 8'6"        Ladies' 100% Polyester Woven Top
> ML-HK3411692        Style: YNC – 3832 PCS.
>
>                     Ladies 100% Polyester Woven Skirt
>                     Style: YND – 9906 PCS.
>                     Ladies' 100% Polyester Woven Blouse
>                     Style: YNC – 2718 PCS.
>                     Ladies' 100% Polyester Woven Top
>                     Style: YCN – 2718 PCS.

(*See* Exhibit A; and Messkoub Decl. ¶10).

As set forth in the Declaration of Mr. Messkoub, the two containers are known as "Garment on Hanger" containers ("GOH"). As such, the containers are equipped with ropes for hanging the individual garments. The use of these containers afforded the garments the benefit of protection during transit and facilitated their handling. It further saved the shipper the expense of packaging the garments. It is important to note that the description of the cargo, provided by the shipper, does not provide any information as to whether the 32,999 pieces of garments were enclosed in any type of packaging within the container.

The Bill of Lading further indicates that ocean freight for the subject carriage was paid on a lump sum basis at a rate of U.S. $5,146.00 per container. (*See* Messkoub Decl. ¶22 and Exhibit A). The Bill of Lading also contains a box providing "Declared Value (see Clause 7.3)", but in this case, neither the Plaintiffs nor the shipper exercised the option provided in Clause 7.3 to declare the actual value of the cargo and pay a higher freight rate. Rather, the shipper elected to pay the applicable standard rate and accept the package limitation set forth in COGSA and the Bill of Lading.

The containers were discharged from the vessel on May 8, 2005, and transported from the discharge port to the receiver's premises by an agent of cargo interests, not by Maersk. The containers arrived at the receiver's premises on May 10, 2005. Plaintiffs allege that the garments contained in container number 6000176 were contaminated with an odor, which was detected when the container arrived at the receiver's premises.[2] Plaintiffs have asserted that the garments

---

[2] While not germane to the issues presented in this motion, it bears mention that Plaintiffs' own surveyor (Norfolk Maritime Surveyors, Inc.) opined that:

> It's my unofficial opinion that too much of whatever chemical that's used to keep the clothing from wrinkling was used during the manufacture of some of the pieces in the container and that is what is causing the odor.

were not saleable and have asserted a claim seeking to recover damages due to the odor on the garments in container 6000176. As explained herein, Plaintiffs' damages related to this container, if any, are limited pursuant to COGSA and the Bill of Lading to $500, based upon the fact that the containers are the "package" for limitation purposes and/or the customary freight unit for this shipment.

The cargo in the other container (Container No. 6058710) was not contaminated with any odor and was accepted as sound. Nonetheless, Plaintiffs have asserted a claim with respect to the cargo carried in that container. Plaintiffs have argued some of the cargo in the undamaged container was to be sold as a set with some of the cargo in the damaged container. Thus, Plaintiffs assert, they are entitled to recover the purported reduced price of the undamaged cargo. Under COGSA (which is controlling in this case), Defendant Maersk can only be liable for actual damage. Further, the governing Bill of Lading provides that Maersk:

> Shall under no circumstances be liable for direct or indirect or consequential loss or damage arising from any other cause whatsoever or for loss of profits.

(*See* Ex. B, Clause 8.2). Accordingly, Plaintiffs are not entitled to recover any amounts related to the cargo which was stowed in the undamaged container. However, for purposes of this motion only, Maersk's position is that any damages related to the undamaged container, if any, are to be limited to $500.00 per container or customary freight unit. Consequently, even if Plaintiffs are entitled to recover any damages for the undamaged container (which they are not), such damages would be limited to $500.

---

(*See* May 19, 2005, letter of Norfolk Maritime to W.K. Webster). Subsequently, Plaintiffs purportedly had the garments tested and determined that the cargo was contaminated with a chemical known as Cyclohexane. Notably, Cyclohexane is "used as a solvent and dry cleaning material." (*See* http://chemicalland21.com/industrialchem/solalc/CYCLOHEXANOL.htm).

## RELEVANT BILL OF LADING PROVISIONS

### Clause 1.  Definitions

> **"Package"** where a Container is loaded with more than one package or unit, the packages or other shipping units enumerated on the reverse hereof as packed in such Container and entered in the box on the reverse hereof entitled "Carrier's "Receipt" are each deemed a Package.

### Clause 5.  Carrier's Responsibility: Port-to-Port Shipment

**5.1**    Where the Carriage is Port-to-Port, then the liability (if any) of the Carrier for loss of or damage to the Goods occurring between the time of loading at the Port of Loading and the time of discharge at the Port of Discharge shall be determined in accordance with any national law making the Hague Rules compulsorily applicable to this Bill of Lading (which will be US COGSA for shipments to or from the Untied States of America) or in any other case in accordance with the Hague Rules Articles 1-8 inclusive only.

### Clause 7.  Compensation and Liability Provisions.

*    *    *    *

**7.2**    Save as is provided in Clause 7.3: ... (b) Where Carriage includes Carriage to, from or through a port in the United States of America and US COGSA applies by virtue of clauses 5.1 or 6.2(b) neither the Carrier nor the Vessel shall in any event be or become liable in an amount exceeding US$500 per Package or customary freight unit.

*    *    *    *

**7.3**    The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and higher compensation than that provided for in this Bill of Lading may be claimed only when, with the consent of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated in the box marked "Declared Value" on the reverse of this Bill of Lading and extra freight paid.  In that case, the amount of the declared value shall be substituted for the limits laid down in this Bill of Lading.  Any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

***Clause 14.  Description of Goods***

**14.1**    This bill of lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition, except as otherwise noted, of the total number of Containers or other packages or units indicated in the box entitled "Carriers Receipt: on the reverse side hereof.

**14.2**    No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

**14.3**    The Shipper warrants to the Carrier that the particulars relating to the Goods as set out on the reverse hereof have been checked by the Shipper on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct.  The Shipper also warrants that the Goods are lawful goods, and contain no contraband, drugs, other illegal substances or stowaways, and that the Goods will not cause loss damage or expense to the Carrier, or to any other cargo during the Carriage.

**14.4**    If any particulars of any Letter of Credit and/or Import License and/or Sales Contract and/or Invoice or Order number and/or details of any contract to which the Carrier is not a party, are shown on the face of this Bill of Lading, such particulars are included at the sole risk of the Merchant and for his convenience. The Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value and in no way increases Carrier's liability under this Bill of Lading.

## POINT I

## IN ACCORDANCE WITH THE SUMMARY JUDGMENT STANDARDS, MAERSK IS ENTITLED TO PARTIAL SUMMARY JUDGMENT LIMITING LIABILITY.

Federal Rule of Civil Procedure 56(b) specifically provides that a defendant may move for summary judgment as to an entire claim "or any part thereof" asserted against it at any time. As stated by the Supreme Court, the summary judgment procedure is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole which is designed to secure a prompt, efficient and inexpensive means of disposing of a case in which a plaintiff alleges a

baseless claim. *See Celotex Corp. v. Catrett*, 477 U.S. 316 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elect. Indus. Co. v. Zenith Radio*, 475 U.S. 580 (1986). Summary judgment as to part of a claim also accelerates the litigation by framing and narrowing the issues for trial and by eliminating from trial those matters which present no genuine issue of material fact. *See* Fed.R.Civ.Proc. 56(d).

The standard for granting a partial summary judgment is the same as that set forth in Rule 56(c). Pursuant to that standard, summary judgment shall be entered

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.Proc. 56(a) & (c).

Under this standard, the moving party has the burden of showing that no genuine issue exists as to a material fact. In response, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts". *Matsushita*, 475 U.S. at 586. Mere "conclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the non-movant's burden"; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 248-50; *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d.1415, 1429 (5th Cir. 1996). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a verdict in that party's favor, and only facts that will affect the trial's outcome under the governing law constitute material facts. *Anderson*, 477 U.S. at 248-50. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted". *Id.* at 249-50 (citations omitted).

Maersk submits that partial summary judgment on the package limitation issue is appropriate in this case. There are no material issues of fact in dispute which would preclude the

Court from addressing this issue as a matter of law. As previous courts in the Second Circuit have held, this is an issue which is ripe for summary disposition. *See, e.g., Orient Overseas Container Corp. (UK) Ltd. v. Sea-Land Services, Inc.*, 122 F. Supp. 2d 481 (S.D.N.Y. 2000); *Ins. Co. of N.Am. v. Blue Star (N.Am.)*, 1997 AMC 2434 (S.D.N.Y. 1997); *In Re Maritima Aragua*, 1992 AMC 1603 (S.D.N.Y. 1992).

## POINT II

### PLAINTIFFS' DAMAGES ARE LIMITED TO
### US $500 PER CONTAINER PURSUANT TO U.S. COGSA.

**A.**    ***COGSA Governs the Parties' Rights & Liabilities Herein.***

The rights and liabilities as between Plaintiffs and Maersk are governed by the provisions of the United States Carriage of Goods by Sea Act, Act, ch. 229, 49 Stat. 1207 (1936), formerly codified at 46 U.S.C. §1300 *et seq.*, ("COGSA"). Section 2 of COGSA (formerly 46 U.S.C. §1302) provides that "[t]his chapter shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." Section 1 of COGSA defines "contract of carriage" as "contracts of carriage covered by a bill of lading or any similar document of title, insofar as such document relates to the carriage of goods by sea."

In the present case, Maersk issued a bill of lading for the carriage of two containers from Hong Kong to Norfolk. *See* Messkoub Decl. Ex. A. Therefore, by definition, COGSA will apply as a matter of law. *See, e.g., In Re Maritima Aragua,* 1992 A.M.C. 1603; *Nat'l Auto. Publications, Inc. v. U.S. Lines, Inc.,* 1982 AMC 2299, 2304 (S.D.N.Y. 1980). Furthermore, as noted above, COGSA is expressly incorporated into the contract of carriage pursuant to Clause 5(1) of the Maersk bill of lading. (*See* Messkoub Decl. Exs. A & B).

**B.**    ***The Garments on Hanger ("GOH") Containers Identified on the Bill of Lading Constitute the Applicable "Package" for Purposes of the $500 Package Limitation Under §4(5) of COGSA and the Maersk Bill of Lading.***

COGSA allows a carrier to limit its damages to $500 per package. Specifically, §(5) of COGSA provides that:

> [n]either the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States.....unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.....

COGSA §4(5), formerly codified at 46 U.S.C. §1304(5). This same provision is incorporated in Clauses 7.2 & 7.3 of the Maersk bill of lading. (*See* Meskoub Decl. Ex. A).

While COGSA does not provide any specific guidance as to what constitutes a "package," the Second Circuit has generally defined the term "package" as "a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *Aluminios Pozuelo v. S.S. NAVIGATOR*, 407 F.2d 152, 155 (2nd Cir. 1968). In terms of determining whether a given "package" satisfies the above criteria, the Second Circuit has developed two distinct lines of authority, one dealing with containerized cargo and the other non-containerized cargo. *Monica Textile Corp. v. S.S. TANA*, 1992 A.M.C. 609 (2nd Cir. 1991).

In cases involving containerized cargo, like that here,[3] the Second Circuit has held that where the number of "containers" is listed under the "NO. OF PKGS." column in the bill of lading, the container itself will be considered the COGSA "package" unless the bill of lading discloses an alternative number of "packages" or specifically provides that the shipment is one of "goods not shipped in packages." *See, e.g., Binladen BSB Landscaping v. M/V NEDLLOYD ROTTERDAM,* 759 F.2d 1006 (2nd Cir. 1985), *cert. denied,* 474 U.S. 902 (1985); *Mitsui & Co. Ltd. v. American Export Lines, Inc.*, 636 F.2d 807, 823 (2nd Cir. 1981).

In *Binladen* the Second Circuit addressed the issue of whether containers of individual plants shipped from the United States to Saudi Arabia were the applicable "packages" under COGSA. The bill of lading listed the number of containers under the "NO. OF PKGS." column, while the number of individual plants within the containers was listed under the "DESCRIPTION OF PACKAGES AND GOODS" column on the bill of lading. The court noted that the bill of lading, merely by listing the number of individual plants within the containers,

---

[3] In non-containerized case, the Second Circuit has adopted a "bright-line test" whereby the number of packages listed under the "No. of Packages" column on the bill of lading is deemed controlling as to the number of "packages" for purposes of limitation under COGSA. The rationale for this bright-line test was explained by the Second Circuit in *Seguros Illimani S.A. v. M/V POPI P*, 929 F.2d 89 (2d Cir. 1991), as follows:

> The number appearing under the heading "NO. OF PKGS." is our starting point for determining the number of packages for purposes of the COGSA per-package limitation, and unless the significance of that number is plainly contradicted by contrary evidence of the parties' intent, or unless the number refers to items that cannot qualify as "packages," it is also the ending point of our inquiry. "Package" is a term of art in the ocean shipping business, and parties to bills of lading should expect to be held to the number that appears under a column whose heading so unmistakably refers to the number of packages. That approach, evident in our more recent cases, *see Binladen,* 759 F.2d at 1015-16; *Yang Ming,* 672 F.2d at 1061, encourages precision in filling out a key aspect of important documents, and the more consistently it is followed, the more it should minimize disputes.

929 F.2d at 94; *see also In Re Maritima Aragua,* 1992 AMC at 1609 ("Thus, under this bright-line test, the number reflected in the "NO. OF PKGS" column is generally controlling. Even where a different number appears in the "DESCRIPTION" column, the court should defer to the number reflected under the "NO. OF PKGS.").

failed to disclose any alternative number of objects, aside from the containers, which could

reasonably be construed as "packages." *Binladen*, 759 F.2d at 1015. Thus, the court held the

parties' designation of the containers as the applicable packages under the "NO. OF PKGS."

column was determinative. *Id.* ("...if the bill of lading lists the container as a package and <u>fails</u>

<u>to describe objects that can reasonably be understood from the description as being packages</u>, the

container must be deemed a COGSA package.") (emphasis added).

In discussing the rationale for its holding in *Binladen*, the Second Circuit noted as

follows:

> When a bill of lading specifies the number of containers but does not
> reveal the number of packages inside, the only certain figure known to both
> parties is the number of containers being shipped. In such event the carrier
> cannot be charged with knowledge of whether the container is filled with
> packages, with unpackaged goods, or with some combination. The carrier
> should not be expected to assume the risk inherent in such uncertainty,
> facing liability that might vary by orders of magnitude depending on the
> exact packaging of goods inside a sealed container, even though this
> information was not revealed to it by the bill of lading.

*Id.* at 1015.

The Second Circuit's holding in *Binladen* is thus premised on the fact that a carrier is

only able to assess its potential liability if the number of "packages" is clearly stated on the bill

of lading. *Id.* at 1015-16. The Second Circuit therefore noted that while a shipper "retains the

power to protect itself by stating in plain terms on the bill of lading the number of COGSA

packages being shipped," the failure to do so "would prevent the carrier from accurately

assessing its potential liability at the time it contracts to transport the goods." *Id.* at 1016; *see*

*also Orient Overseas Container Line, (UK) Ltd. v. Sea-Land Serv. Inc.*, 122 F.Supp.2d 481

(S.D.N.Y. 2000) (containers held to be packages where bill of lading did not reflect that

individual engines were stored on racks within the container); *Alternative Glass Supplies v. M/V*

*NOMZI*, 1999 AMC 1080 (S.D.N.Y. 1999) (container held to be "package" where bill of lading failed to disclose any packaging of the "pieces" of machinery within the container).

In the instant case, the Maersk bill of lading clearly identifies the containers as the applicable "package" in the box for designating the "[t]otal number of containers or packages received by Carrier." (Messkoub Decl. ¶ 7; Ex. A). Furthermore, the bill of lading does not disclose an alternative number of objects which could reasonably be understood to be "packages." The bill of lading only discloses the contents of the container as being 32,999 pieces ("PCS") of individual garments, without providing information as to packaging. The description of individual "pieces" of garments on the bill of lading is clearly not sufficient to put the carrier on notice as to whether these individual garments were packaged. *See, e.g., Aviles v. S.S. SAN JUAN*, 1991 AMC 2681 (S.D.N.Y. 1991). Thus, unless the container is construed as the applicable "package," as clearly provided for under the bill of lading, the carrier has no means of accurately assessing its potential liability and is forced to act at its peril. This is precisely the type of uncertainty which the Second Circuit sought to eliminate in *Binladen*.

The application of the COGSA package limitation to the GOH containers in this case, as opposed to the individual garments, is supported by the holding in *Am. Home Assurance Co. v. Crowley Am. Transp., Inc.*, 2003 AMC 510, 2003 U.S. Dist. LEXIS 2072 (S.D.N.Y. 2003). In that case, which involved a virtually identical fact pattern in terms of the shipper's description of the shipment on the face of the bill of lading, the Court held that the GOH container constituted the applicable unit of packaging. *Id.* at *14-15. The Court expressly relied upon the holding in *Binladen* to reject the plaintiff's contention that the individual wrapped garments, or sets of garments, constituted "packages" given the absence of any information on the bill of lading as to how the individual garments were packaged within the container. In arriving at its holding the

Court stressed that it was precisely this type of "uncertainty" as to the applicable number of packages that the *Binladen* holding was designed to eliminate. *Id.* at *14.

The conclusion that the GOH containers are the "package" for limitation purposes is further supported by the Eleventh Circuit's decision in *Fishman & Tobin, Inc. v. Tropical Ship. & Const. Co., Ltd.*, 1999 AMC 1051 (S.D. Fl. 1999), *aff'd.,* 240 F.3d 956 (11th Cir. 2001). The facts and legal issues in *Fishman* are essentially identical to those in the present case. The relevant issue in *Fishman* was whether a containerized shipment of 5,000 jackets from the Dominican Republic to Miami was subject to the COGSA package limitation on the basis of the container or the individual jackets. The individual jackets were covered with plastic and hung in the container without any packaging.[4] The bill of lading described the shipment as "One Forty Foot container Said To Contain 5,000 units of men's jackets." *Fishman*, 1999 AMC at 1052.

The district court held that, pursuant to the rule set forth by the Second Circuit in *Binladen* (which had been adopted by the Eleventh Circuit in *Hayes-Leger Associates, Inc. v. M/V ORIENTAL KNIGHT*, 765 F.2d 1076 (11th Cir. 1985)), the container was the applicable COGSA "package" rather than the individual suits. 1999 AMC at 1056. In arriving at this holding, the court stressed that the term "unit" in the bill of lading "does not connote preparation in any way for transportation, and, accordingly, each unit consisting of a man's jacket is not a package under COGSA." *Id*; *see also M/V ORIENTAL KNIGHT*, 765 F.2D 1076 (11th Cir. 1985). Thus, the court held that in accordance with the "*Binladen* rule," where the bill of lading lists the container as the package and fails to disclose an alternative number of "packages" within the container, the container itself will be deemed the "package" under COGSA. 1999 AMC at

---

[4] Although the suits were apparently covered with plastic, this clearly did not have any bearing on the court's package analysis. Apparently, the court simply disregarded the coverings because a plastic cover on a suit is not sufficient to constitute a "package."

1052. The district court's holding in *Fishman* was subsequently upheld by the Eleventh Circuit on the same grounds, namely pursuant to the *Binladen* rule. *See* 240 F.3d at 964-965 ("..our precedent has clearly required that the number of packages that are declared must be indicated in the number/quantity of packages column on the bill of lading.").[5]

In preparing the Bill of Lading here, the shipper, acting on behalf of Plaintiffs, chose to identify only the two "GOH" containers in the total number of packages box on the front of the Bill of Lading. This evidences a clear intent on the part of the parties to treat the GOH container as the "package" for purposes of the COGSA package limitation. As the Bill of Lading fails to disclose an alternative number of "packages" (identifying only the total  number of pieces), Maersk respectfully submits that the Court should  construe the container as the COGSA "package" in accordance with the controlling case precedent set forth by the Second Circuit in *Binladen*.

**C.    *In the Alternative, If the Court Does Not Find the Containers to be the COGSA Package, the Shipment Should be Treated as "Goods Not Shipped in Packages", and Damages Should be Limited to US $500 Per Customary Freight Unit.***

If the Court does not conclude that the container is the applicable COGSA "package," this shipment should be treated as "goods not shipped in packages," and the $500 package limitation should be applied on the basis of the "customary freight unit." *See* COGSA §4(5), formerly 46 U.S.C. §1304(5).    As set forth at the bottom of the Bill of Lading, and as noted in the Messkoub Declaration, the ocean freight for this shipment was calculated on a lump sum

---

[5] There is a district court case in the Southern District of New York which is at odds with the decision reached by the Eleventh Circuit in *Fishman*. *See Marcraft Clothes, Inc. v. M/V KUROBE MARU*, 575 F.Supp. 239 (S.D.N.Y. 1983). However, as stressed by the court in *Fishman*, the holding in *Marcraft* has been effectively overruled by the Second Circuit's decision in *Binladen*. Specifically, the Second Circuit in addressing *Marcraft* noted as follows: "It is not clear from that decision what figure was entered in the 'packages' column of the bill of lading, although the description of goods was apparently simply '4,400 Sets of Men's Suits with Vest.'...If the entry in the "packages" column was '1 container,' (which we cannot determine from the decision), we would, absent further information, be inclined to disagree with the decision." *Binladen*, 759 F.2d at 1015, n.10.

basis of US $5,146.00. (*See* Messkoub Decl. ¶ 22; Exhibit A attached thereto).  Thus, to the extent this shipment is to be regarded as "goods not shipped in packages", Maersk submits that damages must still be limited to $1,000.00 ($500 per customary freight unit), based upon the applicable freight unit, *i.e.* lump sum per container.  See *Binladen*, 759 F.2d at 1016; *Sea-Land Service, Inc.*, 122 F. Supp. 2d at 490.

**D.    The Shipper Was Given a "Fair Opportunity" to Declare the Value of the Cargo and Pay a Higher Freight Rate to Avoid the COGSA Package Limitation.**

Pursuant to §4(5) of COGSA, a shipper is bound by the $500 package limitation "unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading...."  The courts have interpreted this provision as requiring the carrier to give the shipper "a fair opportunity to avoid the limitation by declaring excess value and paying extra freight."  Schoenbaum, *Admiralty and Maritime Law*, §10-35 (3rd Ed. 2001) (citing *Ins. Co. of N. Am. v. M/V OCEAN LYNX*, 901 F.2d 934 (11th Cir. 1990), *cert. denied*, 498 U.S. 1025 (1991)).

As noted above, Clauses 5 and 7 of the Maersk bill of lading incorporate the terms of the COGSA package limitation under §4(5) and provides that the $500 package limitation applies as the measure of compensation unless "the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated in the box marked 'Declared Value' on the reverse of this bill of lading and extra freight paid."  (*See* Ex. B, Clause 7.3).  On the face of the bill of lading, the shipper is provided with the following space in which to declare the value of the cargo:

Declared Value (see clause 7.3)

(*See* Messkoub Decl. ¶¶ 20-21; Exhibits A and B attached thereto).

The Second Circuit has held that language almost identical to the above is sufficient to satisfy the carrier's burden of providing the shipper with "fair opportunity" to avoid the $500 package limitation under COGSA. *Gen. Elec. Co. v. Nedlloyd*, 1987 A.M.C. 1817, 1828 (2nd Cir. 1987), *cert. denied*, 484 U.S. 1011 (1988) (holding that the inclusion of language on the back of the bill of lading incorporating §4(5) of COGSA, coupled with a space on the face of the bill of lading to declare the value of the cargo, provides sufficient notice to the shipper and satisfies the carrier's burden of providing "fair opportunity").

In the present case, the shipper elected not to declare the value of the cargo and pay a higher freight rate. Thus, although the shipper had the opportunity to avoid the effect of COGSA's package limitation by paying a slightly higher freight, it elected not to do so. Plaintiffs are now estopped from any argument that they were not provided with "fair opportunity" to avoid the $500 package limitation under COGSA and Plaintiffs must live with the consequences of that election. *See also Fishman*, 2001 AMC at 1668.

## CONCLUSION

For the reasons set forth above, Defendant Maersk respectfully submits that Plaintiffs' damages in this case, if any, must be limited to US $500 per container (a total of $1,000) based upon the container as the applicable COGSA "package," or alternatively based upon the "customary freight unit" which is calculated on a flat rate per container.

Dated: New York, New York
        November 5, 2007

                                         FREEHILL HOGAN & MAHAR, LLP

                                         Attorneys for Defendant MAERSK

                       BY:               _____
                                         GINA M. VENEZIA (GV 1551)
                                         WILLIAM J. PALLAS (WP 6201)
                                         80 Pine Street
                                         New York, New York 10005
                                         (212) 425-1900


TO:     DUANE MORRIS LLP
        Attorneys for Plaintiffs
        744 Broad Street, Suite 1200
        Newark, New Jersey 07102
        Attention:  Alissa M. Ryder
        (973)424-2000