UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTON MCNAUGHTON OF SQUIRE, INC., JONES APPAREL GROUP, INC.,<br><br>              Plaintiffs<br><br>- against -<br><br><br>M/V MARGRETHE MAERSK, in rem, Maersk Line, Maersk Sealand,<br>              Defendants. | Civil Action No. 07-CV-3716 (RWS)<br><br>**PLAINTIFFS NORTON MCNAUGHTON OF SQUIRE, INC. AND JONES APPAREL GROUP, INC.'S RULE 56.1 STATEMENT IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT** |

      Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1(a), NORTON MCNAUGHTON OF SQUIRE, INC. and JONES APPAREL GROUP, INC. (collectively referred to as "Plaintiffs"), by and through their attorneys, Duane Morris LLP, contend there is no genuine issue to be tried as to the following material facts submitted in support of Plaintiffs' Motion for Partial Summary Judgment against Defendants M/V MARGRETHE MAERSK, in rem, Maersk Line, Maersk Sealand ("Defendants" or "Maersk") for liability for damage to the subject cargo of ladies garments.

      1.     On or about April 12, 2005, PYL Apparel Limited ("PYL") issued Invoice No. PYL-019/05-06 ("Invoice") to Norton McNaughton of Squire, Inc. ("Norton") for Norton's purchase of 32,999 pieces of ladies garments from PYL. See 11/19/07 Declaration of James W. Carbin ("Carbin Dec."), Exhibit 1.

      2.     A true copy of the Invoice is attached as Exhibit 1 to the Carbin Declaration.

      3.     The invoice for 32,999 pieces of garment purchased by Norton consisted of 19,899 pieces of Ladies 100% Polyester Woven Skirt; 6550 Pieces of Ladies 100% Polyester

Woven Blouse; and 6550 Pieces of Ladies 100% Polyester Woven Top (hereinafter "the Cargo"). See Carbin Dec., Ex. 1.

4. PYL booked the carriage of the packaged garments from Hong Kong to Norfolk, Virginia with Maersk.

5. Maersk operates container vessels between the United States and Hong Kong.

6. As such, Maersk supplied two of its own containers for the shipment. See Carbin Dec., Ex. 2, print out from Maersk's website, www.maerskline.com.

7. Each of the garments were packaged for transport on a hanger and individually wrapped in a clear poly bag that was folded and tape closed at the bottom. See Carbin Dec., Ex. 4, Norfolk Maritime Surveyors Report, pg. 3; see also Ex. 5, photographs of the packaged garment.

8. Maersk knew the cargo to be carried consisted of GARMENT ON HANGER and supplied, at extra costs, special garment hanging equipment on which the individually wrapped pieces of garment were to be hung up in the containers.

9. Maersk issued clean bill of lading number MAEU 501016075, dated April 12, 2005 ("Bill of Lading"). See Carbin Dec., Ex. 3.

10. A true copy of the Bill of Lading is attached to the Carbin Declaration as Exhibit 3.

11. The Bill of Lading reflects 32,999 pieces of packaged garment (GARMENT ON HANGER) consisting of 9993 pieces of Ladies' 100% Polyester Woven Skirt, Style: YEX; 3832 pieces of Ladies 100% Polyester Woven Blouse, Style E: YNC; 3832 pieces of Ladies 100% Woven Top, Style: YNC; 9906 pieces of Ladies 100% Polyester Woven Skirt, Style: YND; 2718

pieces of Ladies 100% Polyester Woven Blouse, Style YNC; and 2718 pieces of Ladies 100% Polyester Woven Top, Style YNC.  See Carbin Dec. Ex. 3.

12. Maersk filled out and issued the Bill of Lading.  See Carbin Dec., Ex. 3.

13. Pursuant to the Bill of Lading, Maersk agreed to carry 32999 PCS of GARMENT ON HANGER from Hong Kong to Norfolk, Virginia, aboard the Vessel MARGRETHE MAERSK (the "Vessel"), Voyage 0506.  See Carbin Dec., Ex. 3.

14. 32,999 pieces of "GARMENT ON HANGER" were stowed in Container Numbers MSKU6058710 and MAEU600176 (the "Containers"), per the Bill of Lading.  See Carbin Dec., Ex. 3.

15. Maersk owned the Containers for the transport of the packaged Cargo.

16. Maersk supplied the Containers for the transport of the packaged Cargo.

17. Maersk billed the shipper for the Containers' "hanging equip[ment]" to hang the packaged garments in the Containers. See Carbin Dec., Ex. 3.

18. True and correct copies of the Packing Lists for the shipment are attached as Exhibits 6 and 7, respectively to the Carbin Declaration.

19. Per the Packing List for Maersk Container Number MAEU60017, it was loaded with 2718 Sets (5436 pieces) of Ladies 100% Polyester Woven Blouse and Ladies 100% Polyester Woven Top; 7146 pieces of Ladies 100% Polyester Woven Skirt; and 2760 pieces of Ladies 100% Polyester Woven Skirt, for a total of 15,342 pieces. See Carbin Dec., Ex. 6.

20. Per the Packing List for Maersk Container Number MSKU6058710, it was loaded with 2760 pieces of Ladies 100% Polyester Woven Skirt; 7233 pieces Ladies 100% Polyester Woven Skirt; and 3832 Sets (7664 pieces) of Ladies 100% Polyester Woven Blouse and Ladies 100% Polyester Woven Top, for a total of 17,657 pieces.  See Carbin, Dec., Ex. 7.

21. Both Containers were loaded at the same time.

22. No odor or damages to the Cargo were noted at the time of loading of the garments. See Carbin Dec., Ex. 8, National Marine Consultants, Inc. survey report.

23. Maersk's surveyor reported "there was no smell during the loading of the cargo." See Carbin Dec., Ex. 8., pg. 3.

24. At all times during the carriage, the Containers were in Maersk's control and custody. See Carbin Dec., Ex. 10, Response to Request for Admission No. 8.

25. On or about May 10, 2005, Container Number MAEU6000176 was opened at the premises of Jones Apparel Warehouse, 170 Butts Street, South Hills, Virginia. See Carbin Dec., Ex. 4, pg. 2.

26. When unloaded, the contents of the Containers were as represented in the Packing Lists and Invoice.

27. When Container Number MAEU6000176 was opened, there was a strong odor emanating from it. See Carbin Dec., Ex. 9, National Marine Consultants survey; see also Ex. 4, Norfolk Maritime Survey, pg. 2.

28. Maersk's surveyor confirmed "a strong odor inside the container." See Carbin Dec., Ex. 9, National Marine Consultants Survey, pg. 2.

29. By contrast, when the companion container was opened, there was no odor reported and the cargo stowed therein was accepted as sound. See Carbin Dec., Ex. 4, Norfolk Maritime Survey, pg. 2.

30. Maersk was notified of the damage.

31. Maersk surveyed the damaged cargo on May 12, 2005. See Carbin Dec., Ex. 9.

32. Maersk's surveyor confirmed there was a strong odor emanating from the cargo stowed in Container Number MAEU6000176. See Carbin Dec., Ex. 9, at p. 1.

33. The odor appeared to be absorbed within all of the garments stowed in Container MAEU6000176. See Carbin Dec., Ex. 9, at pg. 3.

34. Maersk's surveyor confirmed the odor appeared to be absorbed within all of the garments. See Carbin Dec., Ex. 9, at pg. 3.

35. Examination of the cargo stowed in Container MAEU6000176 following delivery to Jones revealed substantial odor contamination. See Carbin Dec., Ex. 4, Norfolk Maritime Surveyors Report, pg. 2.

36. The odor on the garments remained strong after several days even after being naturally aired out. Carbin Dec., Ex. 9, National Marine Survey, pg. 3.

37. Maersk's surveyor confirmed the odor on the garments remained strong after several days even after being naturally aired out. See Carbin Dec., Ex. 9, National Marine Survey, pg. 3.

38. Samples of clothing in Container MAEU6000176 were sent for dry cleaning but "after dry cleaning still retained the odor even though there were no stains on any of the clothing." See Carbin Dec., Ex. 9, National Marine Survey, pg. 2.

39. Maersk's surveyor confirmed that after dry cleaning, the garments still retained the odor even though there were no stains on any of the clothing. See Carbin Dec., Ex. 9, National Marine Survey, pg. 2.

40. Plaintiffs surveyed the damaged cargo on May 17, 2005. See Carbin Dec., Ex. 4.

41. On or about May 23, 2005 samples of clothing in Container MAEU6000176 were sent to EMSL Analytical Laboratory for testing. See Carbin Dec., Ex. 4; see also Carbin Dec., Ex. 11, EMSL report.

42. EMSL conducted testing on the samples. See Carbin Dec., Ex. 11.

43. EMSL found the major volatile component in the clothing was "Cyclohexene". See Carbin Dec., Ex. 11.

44. Cyclohexene is used in "wood preservation formulations." See Carbin Dec., Ex. 11.

45. The last cargo stowed in Container MAEU6000176 before the cargo of ladies garments was lumber. See Carbin Dec., Ex. 10, Response to Request for Admission 19.

46. Plaintiffs' surveyor opined in a final opinion that the "cause of the odor which contaminated the garments originated from the cargo previously carried in the container." See Carbin Dec., Ex. 4, Norfolk Survey, p. 5.

47. Maersk's own surveyor found:

> **Probable Cause of the Damage**
>
> The previous cargo was lumber and the shipper confirmed that there was no smell during the loading of the cargo.
>
> We should also look into the location of the container on the vessel to see if the smell emanated from the hold.

See Carbin Dec., Ex. 8, pgs. 3-4.

48. The odor contamination damage to the garments stowed in Container Number MAEU6000176 necessitated the destruction of the garments. See Carbin Dec., Ex. 12.

49. Plaintiffs suffered a total loss of the contents of the container.

                              **DUANE MORRIS LLP**
                              a Delaware Limited Liability Partnership

                        By: /s/ James W. Carbin
                              James W. Carbin (JC-5004)
                              744 Broad Street, Suite 1200
                              Newark, N.J.  07102
                              973.424.2000
                              Attorneys for Plaintiffs

<u>Dated</u>: November 19, 2007

TO:

William Pallas, Esq.
Freehill Hogan & Mahar
80 Pine Street, 24th Floor
New York, NY 10005