**DUANE MORRIS** LLP
James W. Carbin
Alissa M. Ryder
744 Broad Street
Newark, N.J. , NY 07102
973.424.2000
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| NORTON MCNAUGHTON OF SQUIRE, INC., JONES APPAREL GROUP, INC., | : : : |
| Plaintiffs | : |
| - against - | : Civil Action No. 07-CV-3716 (RWS) : : |
| M/V MARGRETHE MAERSK, in rem, Maersk Line, Maersk Sealand, | : : : |
| Defendants | : |

**NORTON MCNAUGHTON OF SQUIRE, INC. AND
JONES APPAREL GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION
TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

ARGUMENT ........................................................................................................... 3

POINT I - PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY
JUDGMENT FINDING MAERSK IS LIABLE FOR THE DAMAGED CARGO .......... 3

POINT II - PLAINTIFFS HAVE MET THEIR BURDEN OF PROOF
THAT MAERSK IS LIABLE FOR THE DAMAGES TO THE CARGO ....................... 4

   A. THE CLEAN BILL OF LADING ISSUED BY MAERSK
     ESTABLISHES GOOD ORDER AND CONDITION OF THE CARGO. ..... 5
   B. MAERSK DELIVERED THE CARGO TO PLAINTIFFS IN
     A DAMAGED CONDITION. ........................................................... 6
   C. MAERSK'S NEGLIGENCE ESTABLISHES PLAINTIFFS'
     PRIMA FACIE CASE. .................................................................. 7

POINT III - ALTERNATIVELY, MAERSK IS LIABLE AS A BAILEE FOR
DAMAGE TO THE CARGO ................................................................................... 9

POINT IV - MAERSK'S MOTION TO LIMIT ITS LIABILITY SHOULD
BE DENIED BECAUSE THE DECLARATION OF MASSOUD MESSKOUB
SUBMITTED IN SUPPORT THEREOF IS IMPROPER .............................................. 10

POINT V - MAERSK'S LIABILITY FOR THE DAMAGED CARGO
IS NOT LIMITED TO $1000 BECAUSE THE TWO CONTAINERS
DO NOT QUALIFY AS COGSA PACKAGES ............................................................ 11

   A. THE FACE OF THE BILL OF LADING DOES NOT LIST THE
     CONTAINERS AS THE COGSA PACKAGES........................................... 13
   B. THE BILL OF LADING IS AMBIGUOUS .................................................. 15
   C. THE INDIVIDUALLY PACKAGED GARMENTS,
     NOT THE CONTAINERS, QUALIFY AS THE APPLICABLE
     COGSA PACKAGES ................................................................................. 17

POINT VI - THE DAMAGES SHOULD NOT BE LIMITED TO $500 PER
CUSTOMARY FREIGHT UNIT .................................................................................. 20

CONCLUSION......................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

<u>A.J. Cunningham Packing Corp. v. M/V AUSTRALIAN EXPORTER</u>,
    719 F. Supp. 258 (S.D.N.Y. 1989)............................................................................6

<u>Allied Int'l Am. Eagle Trading Corp. v. S.S. "YANG MING,"</u>
    672 F.2d at 1061 ..........................................................................................13

<u>Am. Home Assur. Co. v. Crowley Ambassador</u>,
    2003 U.S. Dist. Lexis 2072...............................................................................14

<u>Anderson v. Liberty Lobby, Inc.</u>,
    477 U.S. 242 (1986)......................................................................................3-4

<u>Arkwright Mut. Ins. Co. v. M/V ORIENTAL FORTUNE</u>,
    745 F. Supp. 920 (S.D.N.Y. 1990)........................................................................5, 7

<u>Berisford Metals Corp. v. S/S SALVADOR</u>,
    779 F.2d 841 (2d Cir. 1985)...............................................................................6

<u>Binladen BSB Landscaping v. M.V. "Nedlloyd Rotterdam"</u>, 759 F.2d 1006, 1012-13 (2d Cir.
    1985) ...................................................................................................12

<u>Caemint Food v. Brasileiro</u>,
    647 F.2d 347 (2d Cir. 1981)............................................................................5-7

<u>Celotex Corp. v. Carrett</u>,
    477 U.S. 317 (1986)........................................................................................3

<u>D'Amico v. City of New York</u>,
    132 F.3d 145 (2d Cir. 1998).................................................................................3

<u>Ferrostaal Corp. v. M/V SINGA WILGUARD</u>,
    838 F. Supp. 757 (S.D.N.Y. 1993).........................................................................5

<u>Imperial Commodities Corp. v. S.S. MARIA AUXILIADORA</u>,
    670 F. Supp. 83 (S.D.N.Y. 1986)..........................................................................6

<u>Ins. Co. of N. Am. v. S/S GLOBE NOVA</u>,
    820 F.2d 546 (2d Cir.1987)................................................................................5

<u>Kent v. United States</u>,
    343 F.2d 349 (2d Cir. 1965)...............................................................................4

<u>Knight v. U.S. Fire Ins. Co.</u>,
    804 F.2d 9 (2d Cir. 1986) ................................................................................4

<u>Leather's Best, Inc. v. S.S. MORMACLYNX</u>,
    451 F.2d 800 (2d Cir.1971)............................................................................9, 13

M. Golodetz Export Corp. v. S/S LAKE ANJA,
 751 F.2d 1103 (2d Cir. 1985)..................................................................................................5

Marcraft Clothes, Inc. v. M/V KUROBE MARU,
 575 F. Supp. 239 (S.D.N.Y. 1983).................................................................................15, 19

Marisa v. M/V CMA LA TOUR,
 No. 05 Civ. 2962 (NRB), 2006 WL 2521269 (Aug. 29, 2006) ...................................15, 19-20

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 475 U.S. 574 (1986).........................................................................................................4, 15

Mitsui & Co., Ltd. v. Am. Export Lines, Inc.,
 636 F.2d 807 (2d Cir. 1981)........................................................................................... Passim

New York Marine & Gen. v. S/S MING PROSPERITY,
 920 F. Supp. 416 (S.D.N.Y. 1996)........................................................................................ 5-6

Nichimen Co. v. M.V. Farland,
 462 F.2d 319 (2d Cir.1972).................................................................................................13

Philippine Sugar Centrals Agency v. Kokusai Kisen Kabushiki Kaisha,
 106 F.2d 32 (2d Cir. 1939)....................................................................................................7

Siderius v. Amilla,
 880 F.2d 662 (2d Cir. 1989).................................................................................................7

Smythgreyhound v. M/V Eurygenes,
 666 F.2d 746 (2d Cir. 1981)..........................................................................................11, 17

St. Pierre v. Dyer,
 208 F.3d 394 (2d Cir. 2000)................................................................................................10

Transatlantic Marine v. M/V OOCL INSPIRATION,
 961 F. Supp. 55 (S.D.N.Y. 1997).........................................................................................6, 9

Vana Trading Co., Inc. v. S.S. METTE SKOU,
 556 F.2d 100 (2d Cir. 1977).................................................................................................5

**Federal Statutes and Rules of Court**

Carriage of Goods by Sea Act of 1936, 46 U.S.C. 1304(5) ("COGSA")....................................1, 4

Fed. R. Civ. P. 56(a) ...............................................................................................................1

Fed. R. Civ. P. 56(c) ............................................................................................................3, 10

Fed. R. Civ. P. 56(e) ............................................................................................................3, 10

Plaintiffs NORTON MCNAUGHTON OF SQUIRE, INC. and JONES APPAREL GROUP, INC. ("Plaintiffs"), by and through their attorneys, Duane Morris LLP, oppose Defendants M/V MARGRETHE MAERSK, in rem, Maersk Line, Maersk Sealand's ("Defendants" or "Maersk"), Motion for Partial Summary Judgment, and Cross-Move, pursuant to Fed. R. Civ. P. 56(a), for Summary Judgment holding Maersk liable for the damages to the subject cargo of ladies garments.

## PRELIMINARY STATEMENT

Maersk's own surveyor admits the odor contamination to the ladies garments stowed in Maersk's container was consistent with the treated lumber product moved in the container on a prior voyage, or may have been from diesel fumes suffered while on the Vessel. Maersk's surveyor was clear that "there was no smell during the loading of the cargo," so that the odor contamination to the garments in one of the two simultaneously stuffed containers occurred while in Maersk's control and custody.

Plaintiffs have established a prima facie case against Maersk for liability for the damaged cargo of ladies garments under the Carriage of Goods by Sea Act of 1936, 46 U.S.C. 1304(5) ("COGSA"). The undisputed evidence demonstrates that Maersk failed to deliver the cargo in the same good order and condition as when received, in breach of Maersk's duties under the clean Bill of Lading it issued. Indeed, the Bill of Lading issued by Maersk is clean and provides for the transport of 32,999 pieces of packaged ladies garments from Hong Kong to Norfolk, Virginia aboard the vessel M/V MARGRETHE MAERSK. The garments were stowed in two containers owned by Maersk. Both containers were loaded with the garments at the same time. No odor or damages to the garments were noted at the time of loading. When the garments arrived Plaintiffs' warehouse in  South Hills, Virginia, the garments in one (1) of the two (2)

containers were found to be severely contaminated with a strong odor.  The garments in the other container, however, were not damaged.

The undisputed evidence shows that Maersk supplied a container that was not suitable for the carriage of the garments.  Maersk's own surveyor declared that the odor contamination was consistent with the treated lumber product moved in the container on  the immediately preceding voyage, or may have been from diesel fumes suffered while on the Vessel.   This result is also consistent with Plaintiffs' surveyor's final opinion and the laboratory testing of the contaminated Cargo which revealed the predominate presence of the chemical "cyclohexane" -- a chemical used to preserve wood.  Accordingly, summary judgment in favor of Plaintiffs ordering Maersk liable for the damages to the cargo is warranted.

In addition, Maersk's liability should not be limited to $500 per container based on COGSA's $500 per package limitation of liability.  The 32,999 packaged pieces of garment, not the containers, are the applicable COGSA packages.

First, the containers cannot qualify as packages because the face of the Bill of Lading does not list the containers as the packages.  No where on the Bill of Lading are the Containers listed as packages.  Second, the Bill of Lading is ambiguous and must be construed against Maersk and in favor of Plaintiffs.   In fact, Maersk's interpretation of what the COGSA package is, is incomprehensible.  If the Bill of Lading is interpreted as Maersk suggests (i.e., treating the containers as the packages), then Maersk's definition of "package" would be: a "container loaded with more than one container."   This interpretation clearly makes no sense.  These ambiguities must be resolved against Maersk.  Third, the contents of the container are plainly disclosed on the Bill of Lading and create a presumption the Container is not the package.  Fourth, the 32,999 pieces of garment that were individually put on a hanger and wrapped in a clear poly bag that

2

was folded and tape closed at the bottom, properly qualify as COGSA packages.  Accordingly,

Maersk's motion for summary judgment seeking to limit its liability to $1000 must be denied.

Last, since the 32,999 pieces of packaged garments identified in the Maersk Bill of

Lading properly qualify as COGSA packages, the COGSA limitation of $500 per customary

freight unit is inapplicable.  Maersk's motion for summary judgment also should be denied for

this reason.

## STATEMENT OF FACTS

Plaintiffs identify and incorporate by reference their Statement of Facts pursuant to Rule

56.1 filed herewith.

## ARGUMENT

## POINT I

## PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT FINDING MAERSK IS LIABLE FOR THE DAMAGED CARGO

Summary judgment is required "when the pleadings, depositions, answers to

interrogatories and admissions on file, together with affidavits, if any, show that there is no

genuine issue of material facts and the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); Celotex Corp. v. Carrett, 477 U.S. 317 (1986); D'Amico v. City of New

York, 132 F.3d 145, 149 (2d Cir. 1998).

The moving party bears the initial burden of demonstrating that no genuine issue of

material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party

has satisfied its initial burden, the non-moving party must come forward with "specific facts

showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 250 (1986).

In deciding a motion for summary judgment, the court's function is to determine whether any material issues of fact exist to be tried. Kent v. United States, 343 F.2d 349 (2d Cir. 1965). "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986). The respondent cannot rely upon "[c]onclusory allegations" that raise no more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

As set forth below, Plaintiffs have established a prima facie case against Maersk for liability under the Carriage of Goods by Sea Act of 1936, 46 U.S.C. 1304(5) (hereinafter "COGSA") and are entitled to summary judgment ordering Maersk liable for the damaged Cargo as a matter of law. Alternatively, Plaintiffs are entitled to summary judgment because Maersk is liable as a bailee for damage to the Cargo.

## POINT II

### PLAINTIFFS HAVE MET THEIR BURDEN OF PROOF THAT MAERSK IS LIABLE FOR THE DAMAGES TO THE CARGO

The undisputed evidence demonstrates that Maersk failed to deliver the cargo of ladies garments (the "Cargo") in the same good order and condition as when received, in breach of Maersk's duties under bill of lading number MAEU 501016075 issued by Maersk, dated April 12, 2005, to transport the cargo from Hong Kong to Norfolk, Virginia ("Bill of Lading").

The Carriage of Goods by Sea Act imposes a nondelegable duty upon carriers to exercise due diligence to "make the holds ... and all other parts of the ship in which the goods are carried,

fit and safe for their reception, carriage and preservation." See COGSA, 46 U.S.C. § 1303. Under COGSA, a consignee establishes a prima facie case for recovery from a carrier by proving delivery of the goods to the carrier in satisfactory condition, and discharge to the carrier in damaged condition. Ins. Co. of N. Am. v. S/S GLOBE NOVA, 820 F.2d 546, 548 (2d Cir.1987) (citing Spencer Kellogg v. S.S. MORMACSEA, 703 F.2d 44, 46 (2d Cir. 983)); M. Golodetz Export Corp. v. S/S LAKE ANJA, 751 F.2d 1103, 1109 (2d Cir. 1985); Caemint Food v. Brasileiro, 647 F.2d 347, 351-52 (2d Cir. 1981); Vana Trading Co., Inc. v. S.S. METTE SKOU, 556 F.2d 100, 104 (2d Cir. 1977). A Plaintiff's burden is satisfied if it can demonstrate delivery of the cargo in good condition to the carrier and either arrival of the cargo in a damaged or short condition. New York Marine & Gen. v. S/S MING PROSPERITY, 920 F. Supp. 416, 422 (S.D.N.Y. 1996); Ferrostaal Corp. v. M/V SINGA WILGUARD, 838 F. Supp. 757, 767 (S.D.N.Y. 1993).

**A.      The Clean Bill of Lading Issued by Maersk Establishes Good Order and Condition of the Cargo.**

First, Plaintiffs meet their prima facie burden because the cargo was delivered to Maersk in good condition. It is well established that a clean bill of lading is prima facie evidence of receipt by the carrier of the cargo in good order and condition. Thyssen, Inc. v. S/S EUROUNITY, 1994 A.M.C. 1637, 1644 (2d Cir. 1994); Caemint, 647 F.2d at 352 (a clean bill of lading is generally prima facie evidence of the delivery of cargo in good condition); see also Arkwright Mut. Ins. Co. v. M/V ORIENTAL FORTUNE, 745 F. Supp. 920, 924 (S.D.N.Y. 1990) (citing Emmco Ins. Co v. Wallenius Caribbean Line, S.A., 492 F.2d 508, 513 (5th Cir. 1974)) (generally an on-board clean bill of lading satisfies the good condition requirement at the time of shipment.) Under admiralty and maritime law, "a bill of lading ... constitute[s] an

[admission] by a carrier that it has received the described goods for shipment." Berisford Metals Corp. v. S/S SALVADOR, 779 F.2d 841, 845 (2d Cir. 1985).

In addition, the condition of the cargo upon outturn and the type of damage sustained can be such as to mandate a finding that the cargo was in good order upon shipment. Caemint Food, 647 F.2d at 351; Transatlantic Marine v. M/V OOCL INSPIRATION, 961 F. Supp. 55, 59 (S.D.N.Y. 1997) (RWS) (finding that plaintiff made out a prima facie case for damages to rolls of paper even though "[d]efendants may have raised an issue of fact as to precisely when and where the damage occurred."); A.J. Cunningham Packing Corp. v. M/V AUSTRALIAN EXPORTER, 719 F. Supp. 258, 260 (S.D.N.Y. 1989); Imperial Commodities Corp. v. S.S. MARIA AUXILIADORA, 670 F. Supp. 83, 86 (S.D.N.Y. 1986).

The clean Bill of Lading issued by Maersk evidences the Cargo was delivered to Maersk in good condition. (See Carbin Declaration of James W. Carbin, Exhibit 3). Further, there is no evidence that the garments were damaged when delivered to Maersk. Both Containers were loaded at the same time, and no odor or damages to the Cargo were noted at the time of loading. (See Plaintiffs Rule 56.1 Statement of Facts (hereinafter "SUF"), at ¶ 21-23.) According to Maersk's bill of lading, the cargo was in good order and condition and was loaded without incident of any kind. Plaintiffs have therefore met their burden of proof in establishing good order and condition of the Cargo on shipment.

### B.    Maersk Delivered the Cargo to Plaintiffs in a Damaged Condition.

Second, Plaintiffs meet their prima facie burden in establishing delivery of the Cargo in a damaged condition. In order to establish the second prong, Plaintiffs must demonstrate that any loss or damage occurred before the cargo was delivered to its possession. S/S MING PROSPERITY, 920 F. Supp. at 422; M/V OOCL INSPIRATION, 961 F. Supp. at 59.

In this case it is without dispute that the cargo stowed in Container MAEU600176 was delivered at Jones Apparel Warehouse, 170 Butts Street, South Hills, Virginia in a damaged condition. (SUF ¶¶ 27-28, 32.) The garments stowed in companion container [Container Number MSKU6058710] did not contain the strong odor although the garments in both containers were from the same plant and were stuffed at the same time. (SUF ¶ 29.)

The evidence shows when Container Number MAEU600176 was opened, there was a strong odor emanating from within the Container. Maersk's own surveyor noted that the odor was absorbed within all of the garments. (SUF ¶ 34.) In fact, the garments had been so severely damaged by the time they reached Plaintiffs, that after samples were dry-cleaned "they still retained the odor even though there were no stains on any of the clothing." (SUF ¶¶ 38-39.)

There is no dispute the Cargo stowed in Container MAEU600176 was delivered to Plaintiffs in a damaged condition. Therefore, Plaintiffs have demonstrated good order delivery to defendants and damaged cargo at outturn, Plaintiffs' *prima facie* case has been met.

**C.    Maersk's Negligence Establishes Plaintiffs' Prima Facie Case.**

Plaintiffs meet their initial burden by showing the nature of the damage would have occurred during Maersk's care and custody. Plaintiffs may show "either through circumstantial or direct evidence 'that the damage was caused by the carrier's negligence and not by any inherent vice of the cargo.' " Siderius v. Amilla, 880 F.2d 662, 664 (2d Cir. 1989) (citing Elia Salzman Tobacco Co. v. S.S. MORMACWIND, 371 F.2d 537, 539 (2d Cir. 1967)); Philippine Sugar Centrals Agency v. Kokusai Kisen Kabushiki Kaisha, 106 F.2d 32, 37 (2d Cir. 1939)). The condition of the cargo upon outturn and the type of damage sustained compels a finding that the cargo was in good odor upon shipment and damaged during Maersk's care. Caemint Food, 647 F.2d at 351; see also Arkwright, 745 F. Supp. at 924 (S.D.N.Y. 1990) ("While the evidence is

circumstantial that the carrier's negligence caused the damage, such evidence in the circumstances of this case is sufficient.")

The evidence shows that the Cargo was fit when stuffed with the two (2) containers as only the contents of one of the two containers suffered the odor contamination. Similarly, Maersk's own surveyor confirmed "there was no smell during the loading of the cargo" and that the "Probable Cause of the Damage" was the "previous cargo [of] lumber . . .". (SUF ¶ 47.)

The laboratory tests confirmed Maersk's surveyor's conclusions that the odor contamination came from the prior cargo of timber. Specifically, testing of the contaminated garments revealed the predominate presence of the chemical "cyclohexane," which is a chemical used to preserve wood and consistent with the previous cargo of lumber stowed in the Container. (SUF ¶¶ 42-46). It is undisputed that the prior cargo stowed in the Container before the subject transport was treated lumber (Alphonsea Avborea- Modern Timber Products.) Maersk's own surveyor concluded:

### Probable Cause of the Damage

The previous cargo was lumber and the shipper confirmed that there was no smell during the loading of the cargo.

We should also look into the location of the container on the vessel to see if the smell emanated from the hold.

(Carbin Dec., Ex. 8).

Further, Plaintiffs' surveyor expressly opined in a final report after the testing of the garments had been completed that the "cause of the odor which contaminated the garments originated from the cargo previously carried in the container." (SUF ¶ 46.)

Maersk supplied the two containers for the transport of the packaged Cargo and the containers' hanging equipment to hang up the garments in the containers. (SUF ¶¶ 15-17.) Maersk knew the Container was to be used for the transport of garments. The evidence plainly

shows Maersk provided a container that was not suitable for the carriage of garments. Further, the evidence shows that the cargo damage was caused by Maersk's supply of an a container contaminated from a prior cargo of treated timer for the stowage of the ladies garments. Accordingly, Maersk should be held liable for the damages to the cargo.

### POINT III

### ALTERNATIVELY, MAERSK IS LIABLE AS A BAILEE FOR DAMAGE TO THE CARGO

Maersk is also liable to Plaintiffs pursuant to the law of bailing.

Under the law of bailment, a bailor makes out a prima facie case of bailment by establishing that the goods were delivered in good condition and returned in damaged condition. See Leather's Best, Inc. v. S.S. MORMACLYNX, 451 F.2d 800, 812 (2d Cir.1971); see also M/V OOCL INSPIRATION, 961 F. Supp. at 60. The burden of production, but not the burden of persuasion, then shifts to the bailee. Id. The bailee then must show either how the disaster in fact occurred and that this was in no way attributable to his negligence, or that he exercised the requisite care in all that he did with respect to the bailed article so that, regardless of how the accident in fact transpired, it would not have been caused by any negligence on his part. Id. (internal citations omitted).

As set forth above regarding Maersk's liability for the odor contamination, the Cargo was delivered in good condition and returned in damaged condition. Maersk had custody of the Cargo during the voyage from Hong Kong to Virginia. The Cargo was not in good order and condition upon delivery to Plaintiffs' warehouse. The evidence shows the Cargo was damaged by the prior cargo stowed in the Container before the subject shipment. Maersk's own surveyor opined that the prior cargo stowed in the container was a probable cause of the damage. (SUF ¶ 47). Accordingly, Maersek should be found liable to Plaintiffs also as a bailee.

9

## POINT IV

### MAERSK'S MOTION TO LIMIT ITS LIABILITY SHOULD BE DENIED BECAUSE THE DECLARATION OF MASSOUD MESSKOUB SUBMITTED IN SUPPORT THEREOF IS IMPROPERR

The Declaration of Massoud Messkoub which was submitted by Maersk in support of its motion for summary judgment seeking to limit Maersk's liability to $500 for each container based on the COGSA $500 per package limitation of liability, is improper on the basis that Mr. Messkoub has no direct personal knowledge of the subject shipment or the preparation of the Bill of Lading. (See 11/05/07 Declaration of Massoud Messkoub ("Messkoub Dec.") at ¶1)). Mr. Messkoub is Director of the Claims Department for Maersk. (Id.) As Director of Claims, Mr. Messkoub has no actual personal knowledge of the preparation of the Bill of Lading or of the physical transport of the shipment. Mr. Messkoub did not prepare or issue the bill of lading at issue. As Director of Claims, Messkoub only would have seen copies of the subject shipping documents after a claim had been made against Maersk.

Rule 56(e) requires that affidavits and declarations submitted in conjunction with a motion for summary judgment be made on personal knowledge, set forth admissible facts; and show affirmatively that the affiant is competent to testify to the matters stated. See Fed. R. Civ. P. 56(c); St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000) (noting that affidavits not made on personal knowledge are insufficient summary judgment proof).

Mr. Messkoub's declaration is clearly not based on his own personal knowledge of the transport of the shipments, but rather, on his years of experience in handling claims for Maersk. Messkoub's testimony must be stricken for lack of personal knowledge where it relates to his purported knowledge of the subject shipment and the preparation of the Bill of Lading.

As discussed further herein, the Bill of Lading issued by Maersk is ambiguous and does specify that the two containers are the packages. Maersk's liability therefore is not limited to $500 per container.

## POINT V

### MAERSK'S LIABILITY FOR THE DAMAGED CARGO IS NOT LIMITED TO $1000 BECAUSE THE TWO CONTAINERS DO NOT QUALIFY AS COGSA PACKAGES

Maersk's Motion for Summary Judgment seeking to limit its liability to $500 per Container should be denied because the individually packaged garments, not the Containers, qualify as the applicable COGSA package.

The Second Circuit has consistently found that containers are not COGSA packages absent a clear agreement between the parties to treat the container as the package, at least so long as the container's contents and the number of packages or units are disclosed. Mitsui & Co., Ltd. v. Am. Export Lines, Inc., 636 F.2d 807, 821 (2d Cir. 1981); Smythgreyhound v. M/V Eurygenes, 666 F.2d 746 (2d Cir. 1981).

The reason for the skepticism over treating a container as a package is that the prevalent large metal shipping container furnished by a carrier is "functionally part of the ship". Monica, 952 F.2d at 641 (citing Binladen BSB Landscaping v. M.V. "Nedlloyd Rotterdam", 759 F.2d 1006, 1012-13 (2d Cir. 1985)). Courts have explained that they cannot escape the belief that the purpose of § 4(5) of COGSA was to:

> set a reasonable figure below which the carrier should not be permitted to limit his liability and that "package" is thus more sensibly related to the unit in which the shipper packed the goods and described them than to a large metal object, functionally a part of the ship, in which the carrier caused them to be "contained."

Id. at 639 (citing Leather's Best, 451 F.2d at 812). A carrier's classification of a container as a "package" runs against the grain of COGSA because it permits the carrier to limit its liability

unduly.  <u>Binladen,</u> at 1013-14.    Accordingly, courts must "take a critical look" at clauses purporting to define the container as the COGSA package.  See <u>Mitsui,</u>636 F.2d at 815; <u>Binladen</u>, 759 F.2d at 1012-13 ("classification of [the container] as a 'package' would violate the purpose of § 4(5) by permitting the carrier to limit its liability unduly").  Courts are encouraged to cast a  "jaundiced eye upon language purporting to embody such an agreement."  <u>Monica</u>, 952 F.2d at 641.

In <u>Mitsui,</u> the Second Circuit established a presumption that, where the contents of a shipping container are disclosed in a bill of lading, the shipping container is not the package for purposes of Section 4(5) of COGSA.  See <u>Mitsui</u>, 636 F.2d at 821 ("generally a container supplied by the carrier is not a COGSA package if its contents and the number of packages or units are disclosed" in the bill of lading); <u>Monica</u>, 952 F.2d at 642 (holding that each of 76 bales of cloth stowed inside single shipping container, rather than container, were the separate "packages" for purposes of COGSA's $500 per-package limitation on liability); <u>see also</u> <u>Transatlantic Marine Claims Agency, Inc. v. M/V MASON LYKES</u>, 92 Civ. 1846 (LMM), 1993 WL 119780, at *4  (S.D.N.Y. April 9, 1993) (holding that "sixteen pieces" of machinery disclosed on bill of lading, and not the container, were the COGSA packages).

Only in exceptional circumstances when a bill of lading expressly lists the number of containers under a "No. of Packages" column or explicitly refers to the container as one package and does not describe the cargo in terms that can reasonably be understood as packages, have courts found that each container constitutes a package.  See <u>Binladen</u>, 759 F.2d at 1015.   Where the bill of lading indicates an alternative number of items which can reasonably be understood as packages, however, this alternative number of packages should be considered the COGSA packages for purposes of determining the carrier's liability.  See <u>Mitsui</u>, 636 F.2d at 819-20;

Leather's Best, 451 F.2d at 815; M/V MASON LYKES, 1993 WL 119780 at *3. Moreover, courts have found that a container qualifies as the "package" only if the bill of lading discloses that the parties have so agreed in terms that are "*explicit and unequivocal.*" Monica, 952 F.2d at 642 (emphasis added).

Contrary to Maersk's assertions, the two Containers cannot qualify as the COGSA packages under the applicable law. First, the face of the Bill of Lading which was filled out and issued by Maersk does not list the Container as the package. Second, the Bill of Lading is ambiguous and must be construed against the carrier. Third, contrary to Maersk's assertions, the contents of the shipping container are clearly recited on the bill of lading, creating a presumption the Container is not the package. Fourth, the 32,999 packaged pieces of garment qualify as the packages.

**A.      The Face of the Bill of Lading Does Not List the Containers as the COGSA Packages.**

Maersk's motion for summary judgment must be denied because the Bill of Lading does not specify that the Container is the applicable "package."

The Bill of lading is the contract between the shipper and the carrier, and it is the starting point and "touchstone" of any analysis. See Allied Int'l Am. Eagle Trading Corp. v. S.S. "YANG MING," 672 F.2d at 1061. The entries in the bill of lading are thus important evidence of the intent of the parties to the shipping contract. See Nichimen Co. v. M.V. Farland, 462 F.2d 319, 335 (2d Cir.1972). Courts first must look to the Bill of Lading in determining whether a shipping container should be treated as the relevant package for purposes of COGSA.

The Bill of Lading issued by Maersk includes a box with the pre-printed caption:

> Kinds of packages; Description of goods; Marks and Numbers;
> Container No./Seal No.

13

The lower left quadrant of the Bill of Lading also includes a pre-printed Box titled:

> Carrier's Receipt (see clauses 1 and 14) Total number of **containers <u>or</u> packages** received by the Carrier.

(Carbin Dec., Ex. C) (emphasis supplied).    This language demonstrates that Maersk itself distinguishes a container as not being a package and undermines Maersk's efforts to rely upon their box to argue the two containers are somehow defined as the packages. Had Maersk sought to make the containers the packages, the entry should have been "2 packages" not "2 containers."

Significantly, the Bill of Lading does not contain a box which designates the "No. of Pkgs." There is also no separate column entitled "No. of Pkgs." <u>Compare</u> <u>Binladen</u>, 759 F.2d at 1009. Indeed, unlike the cases which Maersk expressly relies upon in its moving papers, the Bill of Lading issued by Maersk in this case does not list the "Container" as the package, and as discussed further herein, is ambiguous. <u>Compare</u> <u>Binladen</u>, 759 F.2d 1006 ("Container was listed under the "NO. OF PKGS." column in the bill of lading."); <u>Am. Home Assur. Co. v. Crowley Ambassador</u>, 2003 U.S. Dist. Lexis 2072, *1, 2003 AMC 510 (S.D.N.Y. 2003) ("Container" listed under the heading "No. of TRLS/CONTS.PKGS"); <u>Fishman & Tobin, Inc. v. Tropical Ship. & Const. Co., Ltd.</u>, 1999 AMC 1051 (S.D. Fl.), <u>aff'd</u> 240 F.3d 956 (2d Cir. 1999) (bill of lading provided "the quantity" was "1 x 40'").

Maersk contends that the box in the bill of Lading labeled "[t]otal number of containers **<u>or</u>** packages received by Carrier" identifies the containers as the package. (See Maersk Memorandum of Law in support of Motion for Summary Judgment, pg. 12) (emphasis supplied). It does not. The assertion ignores the disjunctive "or", which distinguishes between "container" and "package." Maersk's designation of "2 Containers" furthers Plaintiffs' position that the 32,999 pieces of garment, not the Containers, are the applicable COGSA packages. Had Maersk intended to designate the Containers as the COGSA package, then "2 Packages" would have

been marked in the Carrier's Receipt Box instead of "2 Containers." No where on the Bill of Lading are the Containers marked as "packages."

In sum, the face of the Bill of Lading does not specify the Containers as the packages. Maersk's motion should be denied on this basis alone.

### B.    The Bill of Lading is Ambiguous

Even assuming, *arguendo*, the Bill of Lading listed the Containers as packages, which it did not, Maersk's Motion for Summary Judgment fails because the Bill of Lading is ambiguous and must be resolved against Maersk.

It has long been held that a carrier may not unilaterally decrease its liability by ambiguous entries in the bill of lading designed to suggest that the container is "a package." Marcraft Clothes, Inc. v. M/V KUROBE MARU, 575 F. Supp. 239, 243 (S.D.N.Y. 1983) (finding mens suits on hangers wrapped in plastic bag, not the container, were the COGSA packages); Matsushita, 414 F. Supp. at 899 ("Allowing the carrier . . . to insert an essentially unbargained-for definition of 'package' in the bill of lading would effectively eliminate the protection COGSA was meant to afford shippers.")  "[W]hen a bill of lading refers to both containers and other units susceptible of being COGSA packages, it is inherently ambiguous." Monica Textile, 952 F.2d at 642.

Bills of lading are contracts of adhesion and any ambiguities therein must be resolved against the carrier. Mitsui, 636 F.2d at 822-23; Monica Textile, 952 F.2d at 642 (concluding that ambiguity in bill of lading should be resolved against the carrier because the parties had not clearly and explicitly agreed to treat the container as the COGSA package.); see also Marisa v. M/V CMA LA TOUR, No. 05 Civ. 2962 (NRB), 2006 WL 2521269, at *3 (Aug. 29, 2006) (finding bill of lading with box captioned "Total No. of Containers/Packages received by the

Carrier" with a number "1" entered below it, as designed created uncertainty and ambiguities which "should be resolved against the carrier who drafted the agreement").

The Bill of Lading issued by Maersk is ambiguous and does not reflect any agreement between the parties to treat the Container as the package. As explained above, the Bill of Lading does not identify the Containers as the packages. Moreover, the definitions of "Container" and "Package" purportedly displayed on the back of the Bill of Lading are ambiguous. They suggest the Container was never intended to qualify as a COGSA package. Indeed, the separate definitions for the terms "container" and "package" suggest the terms are not interchangeable.

### 1. *Maersk's Definition of Package*

The definition of "Package" which Maersk relies upon in support of its motion, is ambiguous and reveals no intent to treat a container as a "package".

First, the definition of "package" does not include a container within its scope. The term "Package" is defined by Maersk as follows:

> **"Package"** where a Container is loaded with more than one package or unit, the packages or other shipping units enumerated on the reverse hereof as packed in such Container and entered in the box on the reserve hereof entitled 'carrier's Receipt' are each deemed a Package.

Second, if read as Maersk suggests (i.e, regarding the container as the package), the definition of "package" would reveal the applicable COGSA "packages" in this case to be containers stowed inside a container:

> **"Package"** where a Container is loaded with more than one [Container], the [Containers] enumerated on the reverse hereof as packed in such Container and entered in the box on the reserve hereof entitled 'carrier's Receipt' are each deemed a Package.

According to this definition, for the Containers to qualify as a "Package", they must be loaded into another container.   Obviously, this does not make sense.  The definition of "package" is ambiguous and must be construed against Maersk.

### 2.    *Maersk's Definition of Container*

Maersk's definition of "Container" also indicates the Containers are not the applicable packages.  The term "Container" is defined by Maersk as:

> any container (including an open top container), flat rack, platform, trailer, transportable tank, pallet or any other similar article used to consolidate the Goods and any connected equipment.

This definition of "Container" does not include a "package" within in its scope.  The definition of "Container" evidences Maersk's intent to not include package within its scope.

Based on these definitions, the Bill of Lading is ambiguous and should be construed against Maersk.  Accordingly, the 32,999 pieces of packaged garment, and not the containers, are the relevant COGSA packages.  See  Monica, 952 F.2d at 643.

### C.    **The Individually Packaged Garments, Not the Containers, Qualify as the Applicable COGSA Packages**

Where the contents of a shipping container are disclosed in a bill of lading, the shipping container is presumptively not the package for purposes of § 4(5) of COGSA.  See Mitsui, 636 F.2d at 821 ("generally a container supplied by the carrier is not a COGSA package if its contents and the number of packages or units are disclosed (in the bill of lading)...."); Monica Textile, 952 F.2d at 637; Smythgreyhound, 666 F.2d 746, 753 n. 20 (2d Cir.1981) (noting conclusive presumption that "the container is not the package where the bill of lading discloses the container's contents" unless clear and unambiguous language indicates agreement on the definition of "package.").  Further, where an alternative number of items which can reasonably

17

be understood as packages is indicated in the bill of lading, the alternative number of packages should be considered the COGSA package.  Mitsui, 636 F.2d at 819-20.

The Bill of Lading issued by Maersk clearly discloses on its face the contents that were stowed in the Containers.  Specifically, the text directly under the heading in the Bill of Lading "Kinds of packages," reads "Garment on Hanger" 32,999 pieces.  A fair reading of the Bill of Lading further indicates the "Description of the Goods" to be 9993 pieces of Ladies' 100% Polyester Woven Skirt; 3832 pieces of Ladies 100% Polyester Woven Blouse; 3832 pieces of Ladies 100% Woven Top; 9906 pieces of Ladies 100% Polyester Woven Skirt; 2718 pieces of Ladies 100% Polyester Woven Blouse; and 2718 pieces of Ladies 100% Polyester Woven Top. See Carbin Dec. Exhibit C, Bill of Lading.  Further, the heading "Container No./Seal No." can fairly be read to include Container Number MSKU6058710, Seal Number ML-HK3460128; and Container MAEU600176, Seal Number ML- HK3411692.

The contents of the packages of the garment are clearly displayed in the Maersk Bill of Lading and Maersk's assertion that "[i]t has no means of accurately assessing its potential liability" has no basis.  Indeed, Maersk supplied and billed the shipper for the containers' hanging equipment to hang up the garments in the containers. (SUF ¶¶ 15-17.)  Maersk knew the Container was to be used for the transport of garments. Therefore, the Containers are presumptively not the Package under Second Circuit law and the 32,999 pieces of the packaged garments are the applicable packages.

This result is consistent with the Court of Appeals for the Second Circuit's decision in Monica Textile.  There, the court reversed the lower court's ruling that the container, and not 76 individual bales of cloth, was the appropriate COGSA package.  Monica Textile, 952 F.2d at 637.  The shipper sought damages for bales of cotton that were damaged while in transit.  Id.

18

The bill of lading disclosed that the container which the shipper had stuffed and sealed held 76 bales of cotton cloth. Id. The court concluded that a clause in the bill of lading purporting to qualify the container as a package was "unbargained-for boilerplate" that would not be used to determine the COGSA package in the face of other evidence describing the contents of the containers. Id. at 643. The court held there was sufficient other evidence displayed on the face of the bill of lading describing 76 bales of cloth stowed in the container, and concluded that the bales of cotton, not the container was the applicable package. Id.

The court's decision in Marisa, is also instructive. Marisa, 2006 WL 2521269. The court expressly examined whether the bill of lading's entry of "74 items household goods" sufficiently disclosed the contents of the container so that the container presumptively would not qualify as the package Id. at *4. The court concluded that "'74 items household goods' discloses a specific number of identifiable units as the contents of the shipping container" and costrued the 74 items as the proper COGSA package. Id. at *5. In so holding, the court explained:

> it is difficult to believe that any carrier would think that "74 items household goods" referred to unpackaged goods. Unlike a college student's move across town with a rental van, during a professional overseas move, furniture or carpets will be protectively wrapped and other household goods boxed or crated before being placed in a shipping container. Moreover, while some decisions do suggest that a description of the packaging method on the bill of lading is significant, we believe that defendant exaggerates the importance of a precise description of the packaging method.

Id. at *4.

Courts routinely have found that goods and pieces "packed/wrapped in clear plastic" qualify as packages under COGSA. M/V MASON LYKES, 1993 WL 119780, at *4 (holding that "*sixteen pieces*" of machinery disclosed on bill of lading that were wrapped in clear plastic prior to shipment were separate COGSA packages); Marcraft, 575 F. Supp. at 243 (finding mens suits on hangers wrapped in plastic bag, and not the container, were the COGSA packages);

<u>Marisa</u> 2006 WL 2521269 at *4 (finding household goods wrapped in plastic were packages); <u>see also</u> Mitsui (finding rolls of floor coverage were "packaged" where they had been wrapped and there was burlap cloth to hold the discs in place.)

The ladies garments described in the Bill of Lading issued by Maersk reasonably qualify as packages under the applicable law. The garments were put on a hanger and individually wrapped in a clear poly bag that was folded and tape closed at the bottom. (SUF ¶ 7). The Cargo was "protectively" wrapped and sealed for transport and can reasonably be understood as packages.

In sum, the disclosure on the Maersk Bill of Lading of the contents in the container triggers a presumption that the container supplied by the carrier is not the package. Further, the 32,999 garments reasonably can be understood as packages, and qualify as such under COGSA.

## POINT VI

## THE DAMAGES SHOULD NOT BE LIMITED TO $500 PER CUSTOMARY FREIGHT UNIT

Maersk alternatively seeks to limit its liability to $500 per customary freight unit. Maersk's argument is misplaced, however, because COGSA limits a carrier's liability to $500 per customary freight unit only when the goods are "goods not shipped in packages." <u>See</u> COGSA § 4(5).

Since, as explained above, the 32,999 pieces of garment identified in the Maersk Bill of Lading, each of which were individually put on a hanger and wrapped in a clear poly bag that was folded and tape closed at the bottom, properly qualify as COGSA packages, the COGSA limitation of $500 per customary freight  unit is inapplicable.  (See Point V, C, Supra). Maersk's motion for summary judgment should be denied for this reason.

## <u>CONCLUSION</u>

For the reasons stated in Plaintiffs papers, Plaintiffs respectfully request that this Court enter an order granting summary judgment to Plaintiffs finding Maersk liable for the damages sustained to the cargo of ladies garments as a matter of law.   Further, Plaintiffs respectfully submit that Maersk's motion for summary judgment seeking to limit its liability to $1000 pursuant to the COGSA $500 per package limitation of liability should be denied because the 32,999 packaged garments, not the Containers, are the applicable packages.

<u>Dated</u>: November 19, 2007

**DUANE MORRIS LLP**
a Delaware Limited Liability Partnership

By: _____/s/ James W. Carbin_____
James W. Carbin (JC 5004)
Alissa M. Ryder (AR 7405)
744 Broad Street, Suite 1200
Newark, N.J.  07102
973.424.2000
Attorneys for Plaintiffs

TO:

William Pallas, Esq.
Freehill Hogan & Mahar
80 Pine Street, 24th Floor
New York, NY 10005