# EXHIBIT 9



## NATIONAL MARINE CONSULTANTS INC.

236 Ernston Road, Parlin, N.J. 08859 • Tel. 732-553-9210 • Fax. 732-553-9215
e-mail: nmci@natmar.com, web site : www.natmar.com

### REPORT OF SURVEY

Report no.: N 59116/05                              May 27, 2005

---

Examined for      :  The account of whom it may concern.
Requested by      :  Maersk Sealand, Charleston, SC
                     (Ms. Trudy Coffey)
Vessel            :  Margrethe Maersk, Voy. #0506
Date/time survey requested: May 11, 2005 @ 1210 Hours
Date survey commenced      : May 12, 2005
Date survey completed      : May 12, 2005
Container No.     :  MAEU 600017-6 (20')
B/L Number        :  MAEU501016075
Shipment          :  15,347 pieces garments
Purpose of Survey:  To ascertain the cause and extent of
                     damage.
Shipper           :  PYL Apparel Limited
                     RM 1101-02, 11/F Stelux House
                     698 Prince Edward Rd. East
                     Sao Po Kong, KLN
Consignee         :  To order of Norton McNaughton of Squire
                     Inc.
Value of Shipment: Unknown

---

On May 12, 2005, we attended at the premises of Jones Apparel Warehouse, 170 Butts Street, South Hills, Virginia, in order to examine the subject shipment and report on conditions sighted.

## Background information

On May 11, 2005, the warehouse opened the subject container and a strong diesel odor was emanating from the cargo. Three samples were pulled and sent for dry cleaning.

ISO 9001:2000 Certified Quality System and ISO/IEC 17020 Accredited

*New York, Philadelphia, Baltimore, Norfolk, Wilmington(NC), Savannah, Miami, Tampa, New Orleans, Houston, Los Angeles, Port Hueneme, Oakland, Seattle and throughout all points in the U.S., Canada, Europe & Worldwide*

National Marine Consultants Inc.
N 59116/05    Margrethe Maersk        -2-

The three samples after dry cleaning still retained the odor even though there were no stains on any of the clothing.

Our principals therefore requested us to inspect the cargo and container and report on conditions sighted.

## Cargo Underwriters Information

This information was not made available to us, but Mr. Hal Mabee, of Norfolk Maritime, the Surveyors representing the Cargo Underwriters examined the cargo at a later date.

## Persons attending during the survey

Ms. Vicky Walker of Jones Apparel Warehouse was present during our inspection.

## Shipment Description

The subject shipment is said to comprise of 15,347 pieces of ladies garments.

## Cargo stowage and condition in stow

The garments were hanging from the ceiling with the sides and floor lined by plastic sheets.  The skirts and blouses were hanging on a corded rope in loops and on plastic hangers in five rows.

We noted a strong odor inside the container.

## Container Information

1.  **Roof panel**    :    No exceptions noted.

2.  **Side panels**

     Right side  :    Old minor dents and rust areas.
     Left side   :    Old minor dents and rust areas.

National Marine Consultants Inc.
N 59116/05    Margrethe Maersk         -3-


3.  **Front panel**    :    Old minor dents and rust areas.

4.  **Door panels**

    Right door    :    No exceptions noted.
    Left door     :    No exceptions noted.

5.  **Remarks**       :    There were "Flammable/Hazardous"
    stickers that had been attempted to
    be removed and parts of the warning
    stickers were still visible.  These
    stickers were located on left and
    right panels, as well as the doors.


## Condition of the Shipment (findings)

The strong odor could be smelt even from 20-30 feet of
the container.  The odor appeared stronger at the rear end
than at the front of the container.  The odor appears to be
absorbed within all the garments.  Even though the doors had
been opened about 2 hours prior to our inspection, the
strong odor still prevailed within the container and the
cargo.  Even dry cleaned pieces of garments retained the
odor.  We did not see any stains of soil markings on the
clothes.

We were of the opinion that the odor was more chemical
than of diesel fuel.


## Salinity Tests

No water damage was noted or reported and hence, a
salinity test was not necessary.


## Probable Cause of the Damage

We learned from our principals that the previous cargo
was general lumber (Alphonsea Avborea-Modern Timber
Products).  The empty container was thoroughly cleaned
around February 17, 2005 in Hong Kong and then sent to the
shipper for stuffing on April 8, 2005.

National Marine Consultants Inc.
N 59116/05    Margrethe Maersk        -4-

If indeed the container was thoroughly cleaned and the shipper would certify to it, then we suggest that the location of the container on the vessel should be reviewed to see if the smell may have emanated from the hold on board the vessel.

### Final Disposition

On May 27, 2005 we learned that the Consignee has not yet unloaded the cargo due to the presence of heavy odor and fear of workers getting sick and, hence, subject shipment may be destroyed.

This report is based on facts presently know to the surveyor in attendance and is issued without prejudice to the rights of whom it may concern. The right to amend or supplement this report should additional information be made available is reserved.

National Marine Consultants Inc.

PV/ste



01. A sticker on the side panel of the exterior of the trailer



02. An example of how a container looks empty



03. An example of how garments were hung



04. Another sample of the clothing that had been aired with the remaining chemical odor



05. Inspection sticker on the panel trailer



06. Rusty spot on corner of trailer



09. Shows the rust on the front corner



10. Shows where stickers have been removed



11. Sticker of flammable liquid



12. The dry cleaned garments with the odor still present



07. Shirts & blouses inside the container



08. Shows the aixle number and Tenn. Lis. plate



13. The front view of the container



14. The left side at bottom of container



15. The left side from the front showing yellow warning sticker and container number



16. The right panel of the container



17. The ropes that the garments were connected



18. The side panel showing Maersk



19. The wet spot from the rainwater on the right rear of the floor



20. Warning sticker on rear of door



21. Warning sticker on side panel



22. White sticker and other dents & rust markings

# EXHIBIT 10

565-06/GMV
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant Maersk
80 Pine Street
New York, New York 10005
(212) 425-1900
Gina M. Venezia (GV 1551)
William J. Pallas (WP 6201)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NORTON MCNAUGHTON OF SQUIRE,
INC., JONES APPAREL GROUP, INC.,

                    Plaintiffs,                    07 CV 3716 (RWS)

        -    against -

M/V MARGRETHE MAERSK, *in rem*,        **DEFENDANTS RESPONSE TO**
Maersk Line, Maersk Sealand,            **PLAINTIFFS' REQUEST FOR**
                                        **ADMISSIONS**
                    Defendants

Defendant A.P. MOLLER-MAERSK A/S (incorrectly named as "Maersk Line, Maersk

Sealand" in Plaintiff's Complaint, trading as "Maersk Line", and hereinafter referred to as

"Maersk"), by its attorneys Freehill, Hogan & Mahar LLP, hereby responds to Plaintiffs' Request

for Admissions served on October 15, 2007, as follows:

1.      Attached hereto as "Exhibit A" is a true copy of the front side of Bill of Lading

Number MAEU 501016075 issued by Maersk, dated April 12, 2005 ("B/L No. MAEU

501016075").

**RESPONSE:**

Admitted. The bill of lading also includes an attachment which is not included in

"Exhibit A."

2.     Defendant Maersk agreed to carry a cargo of "GARMENT ON HANGER" referred to in Bill of Lading Number MAEU 501016075 from Hong Kong to Norfolk, Virginia on or about April 12, 2005.

**RESPONSE:**  Defendant admits that it agreed to carry, pursuant to the governing Bill of Lading, two sealed containers which were loaded and stuffed by the shipper or its agent. Defendant can neither admit nor deny what the contents of the container contained at loading.

3.     B/L No. MAEU 501016075 reflects that 32999 pieces of "GARMENT ON HANGER" were shipped in two containers under B/L No. MAEU 501016075.

**RESPONSE:**

Denied.  The Bill of Lading does not reflect that 32999 pieces of "GARMENT ON HANGER" were actually stuffed into the container by the shipper's agent.  The Bill of Lading indicates that two sealed containers were delivered for shipment, which containers were loaded, stowed, weighed, and counted by the shipper.  The burden of proving what was actually stuffed and loaded into the container lies with the Plaintiffs and cannot be satisfied simply by reference to the Bill of Lading.

4.     B/L No. MAEU 501016075 reflects that Container Number MSKU 6058710 and Container Number MAEU 6000176 were stowed with 32999 pieces of ladies garments.

**RESPONSE:**

Denied.  The Bill of Lading does not reflect that 32999 pieces of "GARMENT ON HANGER" were actually stuffed into the container by the shipper's agent.  The Bill of Lading indicates that two sealed containers were delivered for shipment, which containers were loaded, stowed, weighed, and counted by the shipper.  The burden of proving what was actually stuffed and loaded into the container lies with the Plaintiffs and cannot be satisfied simply by reference

to the Bill of Lading.

5.      The cargoes were received on board the vessel MARGRETHE MAERSK on or about April 12, 2005.

**RESPONSE**:

It is admitted that the two containers were received aboard the M/V MARGRETHE MAERSK on or about April 12, 2005. However, Maersk can neither admit or deny that the containers contained the pieces of clothing as alleged by plaintiff's counsel, and therefore can neither admit nor deny whether the cargoes themselves were received on board the vessel.

6.      Container Number MSKU 6058710 and Container Number MAEU 6000176 were received on board the vessel MARGRETHE MAERSK on or about April 12, 2005 per the bill of lading.

**RESPONSE:**

Admitted.

7.      Container Number MSKU 6058710 and Container Number MAEU 6000176 were discharged at Norfolk, Virginia on or about May 8, 2005.

**RESPONSE:**

Admitted.

8.      At all times during the voyage, the cargoes were in Maersk's control and custody.

**RESPONSE:**

It is admitted that Container Number MSKU 6058710 and Container Maersk MAEU 6000176 were within Maersk's control and custody during the voyage.

9.      Exhibit "B" hereto is a true copy of a survey report issued by National Marine Consultants, Inc. dated May 27, 2005.

**RESPONSE:**

Admitted.

10.    The survey reflected by Exhibit "B" was requested by Maersk.

**RESPONSE:**

Admitted.

11.    The survey reflected by Exhibit "B" reports that on or about May 11, 2005, Container Number MAEU 6000176 was opened at the premises of Jones Apparel Warehouse, 170 Butts Street, South Hills, Virginia.

**RESPONSE:**

Maersk objects Request Number 11 as it is not the proper scope of a request for admission. The request simply asks whether a document makes a statement and the document speaks for itself.

12.    The survey reflected by Exhibit "B" reports that when the container was opened, there was a strong odor emanating from in it.

**RESPONSE:**

Maersk objects Request Number 12 as it is not the proper scope of a request for admission. The request simply asks whether a document makes a statement and the document speaks for itself.

13.    The survey reflected by Exhibit "B" indicates there was "as strong odor" inside Container MAEU 6000176.

**RESPONSE:**

Maersk objects Request Number 13 as it is not the proper scope of a request for admission. The request simply asks whether a document makes a statement and the document speaks for itself.

14.    The survey reflected by Exhibit "B" indicates that the odor appeared to be absorbed within all of the garments stowed in Container MAEU 6000176.

**RESPONSE:**

Maersk objects Request Number 14 as it is not the proper scope of a request for admission. The request simply asks whether a document makes a statement and the document speaks for itself.

15.    The survey reflected by Exhibit "B" indicates that Container MAEU 6000176 had 15,347 pieces of ladies garments in it.

**RESPONSE:**

Maersk objects Request Number 15 as it is not the proper scope of a request for admission. The request simply asks whether a document makes a statement and the document speaks for itself.

16.    The survey reflected by Exhibit "B" indicates that three samples of clothing in Container MAEU 6000176 were sent for dry cleaning.

**RESPONSE:**

Maersk objects Request Number 16 as it is not the proper scope of a request for admission. The request simply asks whether a document makes a statement and the document speaks for itself.

17.   The survey reflected by Exhibit "B" indicates that "The three samples after dry cleaning still retained the odor even though there were no stains on any of the clothing."

**RESPONSE:**

Maersk objects Request Number 17 as it is not the proper scope of a request for admission. The request simply asks whether a document makes a statement and the document speaks for itself.

18.   The survey reflected by Exhibit "B" states in part under the section entitled "Probable Cause of the Damage" that "We learned from our principals that the previous cargo was general lumber (Alphonsea Avborea-Modern Timber Products)".

**RESPONSE:**

Maersk objects Request Number 18 as it is not the proper scope of a request for admission. The request simply asks whether a document makes a statement and the document speaks for itself.

19.   The last cargo stowed in Container MAEU 6000176 before the cargo of ladies garments was lumber described as Alphonsea Avborea-Modern Timber Products.

**RESPONSE:**

Admitted.


DATED:  New York, New York
        November 9, 2007

                                    FREEHILL HOGAN & MAHAR, LLP
                                    Attorneys for Defendant MAERSK

                BY:

                                    WILLIAM J. PALLAS (WP 6201)
                                    GINA M. VENEZIA (GV 1551)
                                    80 Pine Street
                                    New York, New York 10005
                                    (212) 425-1900

TO:   DUANE MORRIS LLP
      Attorneys for Plaintiffs
      744 Broad Street, Suite 1200
      Newark, New Jersey 07102
      Attention: Alissa M. Ryder
      (973)424-2000

# EXHIBIT 11

**EMSL** *EMSL Analytical, Inc.*

107 Haddon Avenue, Westmont, NJ 08108
Phone: (856) 858-4800

Attn.:    Hal Mabie
**Norfolk Maritime Surveyors, Inc.**
700 Baker Road, Suite 109
Virginia Beach, VA 23462

Phone:    757-671-7775       Fax    757-671-7776

EMSL Case No.:    360500504/360500513
Sample(s) Received:    5/25/05
Date of Analysis:    6/24/05
Date Printed:    7/5/05
Reported By:    E. Mirica

*Materials Science Division*

## - Laboratory Report -

## Source of Odor Identification

## For

## Project: File No. 10499

Scott Van Etten
IH Laboratory Manager

Eugenia Mirica, Ph.D.
Materials Scientist

July 5, 2005
_____
Date

QA/QC :

John Newton
Laboratory Manager

July 5, 2005
_____
Date

COPY

P000000043

*EMSL Analytical, Inc.*

EMSL Case No.: 360500504/360500513
Sample(s) Received: 5/25/05
Date of Analysis: 6/24/05
Date Printed: 7/5/05
Reported By: E. Mirica

Attn: Hal Mabie
**Norfolk Maritime Surveyors, Inc.**
700 Baker Road, Suite 109
Virginia Beach, VA 23462

Phone: 757-671-7775    Fax: 757-671-7776

## Conclusions:

- The major volatile component found was cyclohexane; it is responsible, at in least in part, for the odor of the garments.

## Procurement of Samples and Analytical Overview:

The samples for analysis arrived at EMSL Analytical's corporate laboratory in Westmont, NJ on May 25, 2005. The package arrived in satisfactory condition with no evidence of damage to the contents. The samples were submitted for the purpose of determining the source of odor in garments (blouse and skirt). Unaffected garments arrived at EMSL Analytical's corporate laboratory in Westmont, NJ on May 27, 2005 and registered under EMSL case number 360500513. The samples reported herein have been analyzed per the following equipment and methodologies.

Methods & Equipment:  Gas Chromatography/Mass Spectrometry (GC/MS)
Modified EPA TO-15 method

Attenuated Total Reflection-Fourier Infrared Spectroscopy (ATR-FTIR)

P000000045



**EMSL Analytical, Inc.**

107 Haddon Avenue, Westmont, NJ 08108
Phone: (856) 858-4800

Attn.:   Hal Mabie
**Norfolk Maritime Surveyors, Inc.**
700 Baker Road, Suite 109
Virginia Beach, VA 23462

Phone:   757-671-7775      Fax:   757-671-7776

EMSL Case No.:   360500504/360500513
Sample(s) Received:   5/25/05
Date of Analysis:   6/24/05
Date Printed:   7/5/05
Reported By:   E. Mirica

### Results and Discussion:

An aliquot of the trapped air inside the back that contained the odorous skirt and blouse was sampled and analyzed. Below is a list of compounds found.

| Compound detected | Comments |
|---|---|
| Cyclohexane | Used in pesticide preparations as a solvent. Also used in some wood preservation formulations. |
| Toluene | Can be found in gasoline and spray paint |
| Ethylbenzene | As above |
| Xylene | As above |
| Styrene | Plastic monomer |

The major volatile component found was cyclohexane. Cyclohexane is used as a vehicle or dissolving solvent for pesticide concentrates. It is also used as an alternative solvent or environmental friendly non-ozone-depleting dry cleaning agent, and as a solvent for wood preservative preparations. The remaining four components are commonly found as a group in gasoline.

Based on the information provided by the client, it is plausible that the odor-causing compound, at in least in part, is cyclohexane. Care must be exercised when working in a confined space with such a volatile material. Vapors can cause oxygen displacement and may possibly result in injury or death if supplied air or adequate ventilation is not provided. Also, the vapors may be flammable.

The results are obtained using the methods and sampling procedures as described in the report or as stated in the published standard methods, and are only guaranteed to the accuracy and precision consistent with the used methods and sampling procedures. Any change in methods and sampling procedure may generate substantially different results. EMSL Analytical, Inc. assumes no responsibility or liability for the manner in which the results are used or interpreted.

P000000044

# EXHIBIT 12



This certifies that

**Wings Trucking disposed of Contaminated Material**

**Taken Place: Fairfax Incinerator**

In good standing since
July 29th and July 30th 2005
with all rights and privileges pertaining thereto

Set down and signed this 08th day of August 2005.

_____ President

_____ Secretary

```
        I-66 TRANSFER STATION
            703-631-1778

    Trans# 541994      Acct# 100190
    Acct: CASH CASH
                CUSTOMER
    Permit# 57899
    Loop: 57899         COMM CASH

        ---DATE---    ---TIME---   Site: T1
    IN: 7/30/2005    11:24:37 ADir: IN
    OUT:7/30/2005    12:42:24 PRMID: JCM

    Transac: 1 INBOUND-Permit #
    Payment: 3 Check
    Vehicle: 5 Truck Tractor
    Origin: 21 Fairfax County
    Material: 63 IN-CC ConbRub MixFee
    Destin: 21 Commercial Cash
```

P000000036

**WINGS TRUCKING, INC.**

**INVOICE**

| BILL TO | Jones Apparel | SHIP TO | Wings Trucking 1231 Hendricks Mill Rd Bracey Virginia 23919 |
|---|---|---|---|

| Invoice # | 0729 |
|---|---|
| Invoice Date | 8-2-05 |
| Customer ID | |

| Container number: |
|---|

| 1 load | Clothing | | Dispose and Destroy trailer(open sealed container) of unsanitary clothing | | | | 5700.00 |
|---|---|---|---|---|---|---|---|
| | | | Separated garments from plastic hangers and covers | | | | |
| | | | Disposed of plastic accessories | | | | |
| | | | Contaminated material Incinerated | | | | |
| | | | | | | | |
| | | | | | | | |

| | |
|---|---|
| Subtotal | 5700.00 |
| Tax | |
| Shipping | |
| Miscellaneous | |

*Due Date 9/5/05 thank you!*

Please return the portion below with your payment.

**REMITTANCE**

| Invoice # | 0729 |
|---|---|
| Customer ID | Jones Apparel |
| Date | 8-2-05 |
| Amount Enclosed | $5700.00 |

PHONE
FAX

P000000037