565-06/GMV
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant Maersk
80 Pine Street
New York, New York 10005
(212) 425-1900
Gina M. Venezia (GV 1551)
William J. Pallas, Esq. (WP 6201)
Pamela L. Schultz (PS 0335)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTON MCNAUGHTON OF SQUIRE, INC., JONES APPAREL GROUP, INC., <br><br>               Plaintiffs, <br><br> -  against - <br><br> M/V MARGRETHE MAERSK, *in rem,* Maersk Line, Maersk Sealand, <br><br>             Defendants | 07 CV 3716 (RWS) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MAERSK'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

This reply memorandum is submitted in further support of Defendant Maersk's motion for partial summary judgment to limit Plaintiffs' damages to $1,000.00 pursuant to §4(5) of the United States Carriage of Goods by Sea Act ("COGSA"), formerly 46 U.S.C. §1304(5), and the terms of Maersk's Bill of Lading.[1]  For the reasons set forth below, even if Plaintiffs can establish liability, Plaintiffs' damages are limited to $1,000.00 in accordance with the applicable COGSA package limitation.

### POINT I

### THE CONTAINER IS THE APPLICABLE COGSA "PACKAGE".

A.    THE CONTAINER MUST BE REGARDED AS THE COGSA "PACKAGE" UNDER THE SECOND CIRCUIT'S ANALYSIS IN *BINLADEN* WHERE THE SHIPPER FAILS TO IDENTIFY AN ALTERNATIVE NUMBER OF "PACKAGES" ON THE FACE OF THE BILL OF LADING.

As discussed in detail in Maersk's original memorandum, it is settled law in the Second Circuit that where the number of "containers" is identified as the applicable number of packages on the bill of lading, the container will be considered the COGSA "package" unless (1) the bill of lading discloses an alternative number of items which "can reasonably be understood from the description [on the bill] as being packages," or (2) the bill of lading provides that the shipment is one of "goods not shipped in packages." *See Binladen BSB Landscaping v. M/V NEDLLOYD ROTTERDAM*, 759 F2d 1006 (2nd Cir. 1985), *cert. denied*, 474 U.S. 902 (1985).  The above rule has become settled law in the Second Circuit and has provided courts with a clear and objective guideline for determining when a container should be regarded as a "package" for purposes of

---

[1] On November 19, 2007, Plaintiffs filed a cross-motion for summary judgment on liability.  Maersk will respond to that motion separately, but in short, Maersk maintains that Plaintiffs are not entitled to summary judgment on liability.  In fact, the case should be dismissed in its entirety as it is now abundantly clear that Plaintiffs have failed to come forward with any evidence as to the good order and condition of the garments at the time they were stuffed into the container by the shipper.  In the absence of such evidence, Plaintiffs have failed to make out a *prima facie* case and the claim must be dismissed.  However, even if Plaintiffs could establish liability on Maersk's part, which is denied, their damages should be limited to $1,000.00, as outlined herein.

COGSA. *See Orient Overseas Container Line, (UK) Ltd. v. Sea-Land Service, Inc.*, 122 F. Supp.

2d 481 (S.D.N.Y. 2000); *Alternative Glass Supplies v. M/V NOMZI*, 1999 AMC 1080 (S.D.N.Y.

1999).

As explained below in Points C & D, the use of the word "pieces" on the subject bill of

lading does not constitute a disclosure of an alternative number of items which "can reasonably

be understood" as being "packages". The only unit of packaging disclosed on the bill of lading

is the container. Defendant Maersk therefore submits that given the absence of any alternative

unit of packaging on the face of the bill of lading, the analysis set forth by the Second Circuit in

*Binladen* mandates that the container be treated as the applicable COGSA "package" in this case.

**B.**     **THE BILL OF LADING CLEARLY IDENTIFIES THE CONTAINER AS THE APPLICABLE COGSA "PACKAGE".**

The Maersk bill of lading clearly identifies the container as the applicable "package"

under the box labeled "Carrier's Receipt – Total number of containers or packages." (*See*

Messkoub Decl. ¶7 and Exhibit A attached thereto).[2] Plaintiffs' efforts to obfuscate the

significance of this entry are disingenuous. *See M/V POPI P*, 929 F.2d at 94 ("...parties to bills

of lading should expect to be held to the number that appears under a column whose heading so

---

[2]Plaintiffs' objections as to the qualifications of Mr. Massoud Messkoub to testify as to the terms and preparation of the Maersk bill of lading are entirely without merit. As noted in his Declaration and Supplemental Declaration (submitted herewith), Mr. Messkoub has 20 years experience with Maersk and is fully familiar with the terms of their bill of lading and the procedure by which it is prepared from information provided by the shipper. He provided his Declaration based upon his experience and based upon the information created and maintained by Maersk in the ordinary course of its business. For purposes of this litigation, he is considered the custodian of that information and thus he is fully competent to testify regarding the bill of lading and the meaning of its terms. *See, e.g., Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F.Supp. 2d 373, 378-79 (S.D.N.Y. 2004); *U.S. v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (someone who is sufficiently familiar with the business practice may testify about business records), *cert denied*, 488 U.S. 966 (1988).

At any rate, the parties are in agreement that for purposes of this motion, the bill of lading "speaks for itself." *See* Plaintiff's Response to Defendant's Rule 56.1 Statement. Additionally, the bill of lading is also attached as Exhibit 3 to the Certification of James W. Carbin, Plaintiffs' counsel (hereinafter the exhibits to Mr. Carbin's Certification are referred to as "Carbin Ex.").

unmistakably refers to the number of packages."). In short, the bill of lading clearly establishes that the carrier is acknowledging receipt of "2 container(s)" and not 32,999 individual pieces of garments.

In a desperate attempt to avoid the import of the shipper's description of the cargo on the face of the bill of lading, Plaintiffs argue that the box entitled "Total number of containers or packages received by the Carrier" is in some way ambiguous. Defendant submits that Plaintiffs' argument is nothing more than creative semantics. In fact, the title of the box on the Maersk bill of lading is entirely consistent with the present approach adopted by the Second Circuit with respect to package limitation cases involving containerized shipments. In those cases, the parties may identify the container as the applicable package, or, alternatively, the number of items within the container provided those items can "reasonably" be understood to be packages based upon the information disclosed in the bill of lading. *Binladen*, 759 F2d at 1015. In the present case (and as explained further below), the shipper has failed to disclose any items within the container which could "reasonably" be deemed to be "packages". Thus, the only unit of packaging disclosed on the bill of lading is the container.

Maersk further submits that the container's functional use in this case likewise supports the conclusion that it was the applicable COGSA "package." As set forth in the survey report prepared by Hal Mabie of Norfolk Maritime Surveyors (Carbin Ex. 4), the container was specifically prepared and modified to accommodate the carriage of garments. These modifications included the fitting of steel beams for purposes of securing ropes on which individual garments could be hung during transit. The container was also lined with plastic to protect the individual garments during transit. These preparations indicate that the container was intended to serve the same purpose as cartons, or other forms of "packaging," which in this case

was to provide protection for and facilitate handling of thousands of individual pieces of garments.[3]  Thus, Defendant submits that the shipper has clearly identified the containers as the applicable packages for purposes of the COGSA package limitation.

**C.    INDIVIDUAL "PIECES" OF GARMENTS ARE NOT COGSA "PACKAGES", AND THEREFORE THE SHIPPER HAS FAILED TO DISCLOSE ANY ALTERNATIVE UNITS OF PACKAGING ASIDE FROM THE CONTAINER.**

Plaintiffs' assertion that the 32,999 pieces of individual garments within the container are COGSA "packages" is without merit both as a matter of fact and law.  The argument that individual plastic wrapped garments hanging in a container are COGSA "packages" has been rejected by both the Second Circuit, *Binladen*, 759 F.2d at 1015, n.10, and the Eleventh Circuit, *Fishman & Tobin, Inc. v. Tropical Ship. & Const. Co., Ltd.*, 1999 AMC 1051 (S.D. Fl. 1999), *aff'd*, 240 F.3d 956 (11th Cir. 2001).

As noted by Plaintiffs, the only purported support for this argument is *Marcraft Clothes, Inc. v. M/V KUROBE MARU*, 575 F. Supp. 239 (S.D.N.Y. 1983).  However, Plaintiffs fail to note that this decision has been implicitly overruled by the Second Circuit in *Binladen*.  The cargo at issue in *Marcraft* was described on the bill of lading as "4,400 Sets of Men's Suits with Vest."  *Binladen*, 759 F.2d at 1015, n.10 (emphasis added).  Consequently, the bill of lading was quite clear as to the number of garment "sets" that were stuffed in the container.  Based upon this information, the Second Circuit concluded that **"if the entry in the "packages" column [of the bill of lading] was "1 container," (which we cannot determine from the decision), we would, absent further information, be inclined to disagree with the decision."** *Id.* (emphasis

---

[3] The surveyor describes the container preparations as follows: "The container had been stowed overall with 12,624 garments…Each hanger was placed in a loop that was knotted in a piece of line suspended from removable steel beams. These were secured across the width of the container just under the roof paneling. Approximately 14 of these lines were suspended across the width of each beam. Each line had 9 knotted loops and 9 hangers and garments were hung from each loop. Prior to loading the garments the entire interior of the container was lined with large sheets of clear polyethylene that had been taped to the underside of the roof, the sides and the floor. A large flap of this material hung from the after end of the roof and separated the doors from the after face of stow." Carbin Ex. 4: Norfolk Maritime Surveyors report no. 10499, dated May 2, 2006, p. 3.

added); *see also Am. Home Ass. Co. v. Crowley Ambassador*, 2003 AMC 510 n.9 (S.D.N.Y. 2003).

As noted by the Second Circuit in *Binladen*, one of the primary objectives in adopting a bright line rule in package limitation cases is to provide both shippers and carriers with a degree of consistency and predictability for assessing potential liability. Plaintiffs would have this Court ignore existing precedent thereby undermining the Second Circuit's objective of having uniform and predictable results in applying the COGSA package limitation:

> When a bill of lading specifies the number of containers but does not reveal the number of packages inside, the only certain figure known to both parties is the number of containers being shipped. In such event the carrier cannot be charged with knowledge of whether the container is filled with packages, with unpackaged goods, or with some combination. The carrier should not be expected to assume the risk inherent in such uncertainty, facing liability that might vary by orders of magnitude depending on the exact packaging of goods inside a sealed container, even though this information was not revealed to it by the bill of lading.

759 F.2d at 1015.

In the present case, the bill of lading identifies only the two (2) containers in the "receipt" box on the bill and fails to disclose an alternative number of units which could reasonably be construed as "packages" in the description section of the bill. Maersk respectfully submits that the Court should hold that the container is the appropriate COGSA "package" in accordance with the controlling case precedent in the Second Circuit.

**D.    PLAINTIFFS' ARGUMENT THAT THE INDIVIDUAL GARMENTS ARE PACKAGES IS INCONSISTENT WITH EVIDENCE THAT THE GARMENTS ARE PACKAGED IN "SETS" – A FACT WHICH THE SHIPPER FAILED TO DISCLOSE ON THE BILL OF LADING.**

For the reasons set forth *infra*, Defendant maintains that an individual "piece" of garment in a Garment-on-Hanger ("GOH") container does not constitute a "package" for purposes of the COGSA package limitation. Even if the Court were to hold that an individual garment is a

"package," the bill of lading still fails to provide an accurate description as to the total number of COGSA packages as it appears from the relevant shipping documents that several thousand of the individual garments were consolidated into "sets" prior to stuffing into the container. This fact is reflected clearly in the packing lists for the respective containers (Carbin Exs. 6 and 7).

The packing list for container no. MAEU 6000176 reflects a "TOTAL SHIPPED" 9,906 individual pieces of garments and 2,718 "SETS" of garments for a total of 12,624. (Carbin Ex. 6). This total of 12,624 is also consistent with the total quantity reported by Plaintiffs' surveyor in the Norfolk Maritime Survey dated June 2, 2006. (*See* NMS Survey attached as Carbin Ex. 4, bates nos. 14-15 ("The container had been stowed overall with 12, 624 garments consisting of blouses and skirts in various sizes.....At the time of our survey there were 12,624 garments in the container.")). The packing list for container no. MSKU 6058710 (the container which is not subject of the damage claim) reflects a "TOTAL SHIPPED" of 9,993 individual pieces of garments and 3,832 "SETS" of garments for a total of 13,825. Thus, based upon the packing lists for the two containers carried under the subject bill of lading, the containers were stuffed with a total of 19,899 individual pieces of garments and 6,550 "SETS" of garments. Conversely, the bill of lading provides absolutely no indication of how many of these "sets" of garments were stuffed in the container, but merely provides an overall total of 32,999 individual pieces of garments.[4]

---

[4] The confusion as to the applicable number of individual garments versus "sets" extends even to Plaintiffs' counsel. In response to Defendant's Interrogatories, Plaintiffs' counsel described the shipment within container no.MAEU 6000176 as consisting of "12,624 ladies garments." *See* Plaintiff's Response to Interrogatories dated July 23, 2007, a copy of which is attached hereto as **Exhibit D.** Counsel subsequently amended this response to describe the shipment as "15,342 pieces of ladies garments...Of the garments, 9,906 were 100% polyester woven ladies skirts, and 2,718 were sets of ladies 100% woven blouse and top (5,436 pieces)." Plaintiffs' counsel also describes the claim for damages in the other container (no. MSKU6058710) as both "units" and "sets" and it is still unclear as to which characterization is accurate. *See* Plaintiffs' Amended Response to Interrogatories, dated October 25, 2007, attached as **Exhibit E.**

Defendant Maersk does not concede that these "sets" of garments were packages. However, even if the Court were to find that each "set" is a package, the information provided on the bill of lading would not have provided Maersk with any notice of the number of sets within the container. This is precisely the concern highlighted by the Second Circuit in *Binladen*, 759 F.2d at 1015.

The shipper's failure to disclose the number of alleged "sets" of garments within the container in the present case is identical to the factual scenario presented in *Am. Home Ass. Co. v. Crowley Ambassador*, 2003 AMC 510 (S.D.N.Y. 2003). In that case, Judge Leisure held that the only accurate and reliable reflection as to the number of packages on the bill of lading was the container. In rejecting plaintiff's argument that the 22,355 individual pieces of garments constituted "packages," the court noted as follows:

> In the case at bar, the bill of lading lists the container as a package and the description of the garments does not indicate anything regarding preparation for shipment. Plaintiff attempts to avoid the harsh result of limiting the recoverable damages to $500 by arguing that through the course of dealing between [shipper] and [carrer}, defendants had sufficient notice of the number of packages...Even if a course of dealing between the parties can substitute for a bill of lading that fails to describe adequately contents that can be considered packages, such an argument is unavailing in the case at bar because, despite plaintiff's protestations to the contrary, there is no indication on the bill of lading exactly how many of these "packages" were in the container. Indeed, to date, plaintiff seems not to know how many plastic-wrapped sets there were....**This is precisely the type of uncertainty that concerned the *Binladen* Court....While the Court appreciates the reluctance of judges to deem containers the COGSA package, there is simply no other viable option in this matter under the case law that has developed in this Circuit.**

*Id.* at 516 (emphasis added).

The present case is likewise analogous to *Orient Overseas Container Line, (UK) Ltd. v. Sea-Land Service, Inc.*, 122 F.Supp. 2d 481 (S.D.N.Y. 2000). In that case, the bill of lading disclosed a total of 17 containers, each of which contained a total of 104 engines. The engines

were secured on 13 "racks" within the container, each of which held 8 engines. The bill of lading did not disclose the existence of the "racks" within the container. *Id.* at 482-483. Plaintiff argued that each individual engine within the container was a COGSA "package." In addressing this argument, the court first noted that had the number of racks within the container been disclosed on the bill of lading, the court would have been inclined to hold that each "rack" was a proper "package" under COGSA. *Id.* at 488. However, as the existence of the racks was not disclosed on the bill of lading, the court held that the racks did not factor into the COGSA package analysis. *Id.* The court went on to hold that "[s]ince the engines do not qualify as COGSA packages and Ford did not disclose the existence of the racks on the bill of lading, it follows that the court has no choice but to regard the container as the COGSA package." *Id.* at 489 (citing *Binladen*, 759 F.2d at 1015).

Thus, in the present case, even if the Court were to find that each "set" of garments was a package, which Maersk disputes, the number of "sets" of garments is not disclosed on the bill of lading. In the absence of this information in the bill of lading, Maersk could not make an accurate determination of the COGSA "package" limitation based upon the purported sets. *Am. Home Ass.*, 2003 AMC at 516; *Orient Overseas Container Line, (UK) Ltd.*, 122 F.Supp. 2d at 489. As this was a sealed container, stuffed by the shipper, Maersk had no means of knowing whether the individual garments were consolidated into "sets" within the container. Therefore, pursuant to the Second Circuit's holding in *Binladen*, and given the absence of any alternative units of packaging disclosed on the bill of lading, the container would be the proper "package" under COGSA.

## POINT II

### FREIGHT WAS PAID ON A FLAT RATE PER CONTAINER, AND THEREFORE, TO THE EXTENT THE SHIPMENT IS REGARDED AS "GOODS NOT SHIPPED IN PACKAGES," DAMAGES MUST BE LIMITED TO US $500 BASED UPON THE CUSTOMARY FREIGHT UNIT

If the Court finds that the container is not a COGSA "package," Maersk maintains that this shipment should be regarded as "goods not shipped in packages," and the $500 package limitation should be applied on the basis of the "customary freight unit." *See* COGSA §4(5). As noted on the bill of lading, the ocean freight for this shipment was calculated on a lump sum basis of US $5,146.00 per container. (*See* Carbin Ex. 3; *see also* Messkoub Decl. ¶22 & Ex. A t thereto). Plaintiffs do not contest that freight was paid on a "flat rate" per container. (*See* Plaintiffs' Memorandum of Law, Point VI). Thus, Maersk submits that damages must still be limited to US$500.00 based upon the applicable freight unit, *i.e.* lump sum per container. *See Binladen*, 759 F.2d at 1016; *Orient Overseas*, 122 F. Supp. 2d at 490.

## POINT III

### THE SHIPPER WAS GIVEN "FAIR OPPORTUNITY" TO DECLARE THE VALUE OF THE CARGO AND PAY A HIGHER FREIGHT RATE TO AVOID THE COGSA PACKAGE LIMITATION

As set forth in Maersk's original memorandum, the Maersk bill of lading incorporates the terms of the COGSA package limitation under §4(5) and provides that the $500 package limitation applies unless the shipper declares the value of the cargo and elects to pay a higher freight rate. Plaintiffs have not contested that the shipper was provided fair opportunity to pay a higher freight rate and avoid the COGSA package limitation.

## CONCLUSION

For the reasons set forth above, Defendant Maersk respectfully requests that the containers be held to be the applicable COGSA "packages," and that Plaintiffs' damages in this case, if any, be limited to US $500 per container. Alternatively, to the extent the Court finds that the shipment consists of "goods not shipped in packages," Defendant requests that damages be limited to $500 per container based upon the "customary freight unit" as calculated on a flat rate per container basis.

DATED:  New York, New York
        November 26, 2007

                                        Respectfully submitted,

BY:

                                        Gina M. Venezia (GV 1551)
                                        William J. Pallas (WP 6201)
                                        FREEHILL HOGAN & MAHAR, LLP
                                        80 Pine Street
                                        New York, New York 10005
                                        (212) 425-1900
                                        Attorneys for Defendant MAERSK

TO:    DUANE MORRIS LLP
       Attorneys for Plaintiffs
       744 Broad Street, Suite 1200
       Newark, New Jersey 07102
       Attention:  Alissa M. Ryder
       (973)424-2000

## CERTIFICATE OF SERVICE

I, GINA M. VENEZIA, certify that I am counsel of record for Defendant Maersk. On November 26, 2007, the within Reply Memorandum and Declaration of Gina M. Venezia with Exhibits C – E were electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

Additionally, I served by email a true and correct copy of same upon counsel for Plaintiffs:

      James Carbin / Alissa M. Ryder
      DUANE MORRIS LLP
      744 Broad Street, Suite 1200
      Newark, New Jersey 07102

                                   Gina M. Venezia

Dated:  November 26, 2007